[No. C019924. Third Dist. Jan. 9, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
WAYNE E. PEPPER, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

## COUNSEL

George A. Baker, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Margaret Venturi and Kelly A. Elam, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SCOTLAND, J.**—Defendant Wayne E. Pepper was found guilty of being a convicted felon in possession of a firearm (Pen. Code, § 12021, subd. (a)(1)) and being under the influence of a controlled substance (Health & Saf. Code, § 11550). The jury acquitted him of child endangerment (Pen. Code, § 273a; further section references are to the Penal Code unless otherwise specified). Sentenced to a term in state prison, he appeals.

In the published portion of this opinion, we reject defendant's contentions that the trial court erred in failing to instruct sua sponte on the defenses of necessity and transitory possession of the firearm; he received ineffective assistance of counsel due to his trial attorney's failure to request such instructions; and the evidence is insufficient to support his conviction for violating section 12021 because the evidence establishes his possession of the firearm resulted from necessity and was only transitory.

As we shall explain, section 12021 prohibits convicted felons from possessing firearms even momentarily except in self-defense, in defense of others, or as a result of legal necessity. Because defendant's explanation for possessing the firearm, if believed by the jury, does not satisfy the elements of any of these exceptions, he was not entitled to instructions on the defenses of necessity and transitory possession of the firearm.

In the unpublished part of our opinion, we reject defendant's claim that the trial court erred in denying his *Marsden* motion. (*People* v. *Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44].) Accordingly, we will affirm the judgment.

## FACTS

On May 21, 1994, Marie Lewis invited defendant, his sister, Felicia Drummond, and Drummond's two children, two-month-old Adrian and one-year-old Patrick, to stay overnight with Lewis. Defendant and Drummond had no place to stay and were hiding from Drummond's abusive husband. Lewis kept a rifle at her residence.

That evening, Amador County Sheriff Deputy Mark Lawrence went to Lewis's residence in response to a report that an infant had been shot accidentally. There he found a "[n]ewborn, one, two months old" with "a wound in the back area under the shoulder blade, approximately quarter inch diameter [which] appeared to be a gun shot entry wound." Defendant told Lawrence the following: Lewis had informed defendant that she kept a rifle under the bed for protection. While defendant and Patrick were sitting on the floor of the bedroom watching television and Adrian was asleep on the bed, defendant saw the rifle and "reached down to take [it] out from under the bed to put it in a place so [Patrick could not] touch it. As [defendant] had hold of it, he laid the tip on the bed, the gun went off." Defendant said he never pulled the trigger; "it went off for no apparent reason at all."

Sheriff Commander Carl Knobelauch later interviewed defendant on two occasions. At the first interview, defendant admitted that he and Drummond had inhaled methamphetamine prior to the shooting. As he did in his statement to Deputy Lawrence, defendant said he saw the rifle under the bed and pulled it out to put it in a location where Patrick could not reach it. This time, however, defendant explained that the rifle discharged as he picked it up and its end caught on some bedding on the top of the bed. At the next interview, Knobelauch confronted defendant with the inconsistencies between his statements and with the incongruity between those statements and the facts as Knobelauch knew them based on the physical evidence and information he had received from others. Defendant admitted that his initial explanation for possessing the rifle was a "lie." He said the gun was stored in a closet when he and Drummond first arrived at Lewis's residence. Lewis removed the rifle from the closet, showed Drummond how to load it, and returned the gun to the closet. After Lewis left, Drummond got the rifle from the closet and attempted to manipulate the lever on the gun. When the lever

became stuck in the open position, defendant took the rifle from Drummond to "clear" it. In attempting to do so, he ejected two cartridges. Once he got the lever closed, he put the two cartridges back in the rifle. As he set it on the bed, the muzzle got caught on the bedding and the rifle discharged.

Expert testing of the rifle revealed it was in good working order and would not fire unless the safety was off and the trigger was pulled. According to the expert, the rifle did not have a "hair-trigger."

Codefendant Drummond testified that, sometime after Adrian went to sleep, Lewis left the residence. While Drummond was getting Patrick and herself ready for bed, she heard the dogs barking and told defendant she thought someone was outside. Drummond initially saw the rifle on the floor at the end of the bed. She later saw it on top of the bed. She picked up the rifle, then put it down and asked defendant to place it somewhere. She then left the bedroom to get Patrick and heard the gunshot.

Defendant did not testify.

## DISCUSSION

### I

Section 12021, subdivision (a)(1) provides in pertinent part: "Any person who has been convicted of a felony . . . who owns or has in his or her possession or under his or her control any firearm is guilty of a felony."

■ This statutory prohibition against a convicted felon having possession of a firearm is not absolute. For example, in *People* v. *King* (1978) 22 Cal.3d 12 [148 Cal.Rptr. 409, 582 P.2d 1000], the California Supreme Court noted the existence of statutes giving a person the right to use force in defense of self or others, and concluded the Legislature did not intend section 12021 to affect a convicted felon's right to use a concealable firearm in self-defense or in defense of others. (22 Cal.3d at pp. 22-23, 24.) Thus, the court held, "when [a convicted felon] is in imminent peril of great bodily harm or reasonably believes himself or others to be in such danger, and without preconceived design on his part a firearm is made available to him, his temporary possession of that weapon for a period no longer than that in which the necessity or apparent necessity to use it in self-defense continues, does not violate section 12021." (*Id.*, at p. 24.) The court pointed out, however, that for self-defense or defense of others to excuse a violation of

section 12021, ". . . the use of the firearm must be reasonable under the circumstances and may be resorted to only if no other alternative means of avoiding the danger are available. In the case of a felon defending himself alone, such alternatives may include retreat where other persons would not be required to do so." (22 Cal.3d at p. 24)

In this case, defendant advances another excuse which he believes absolves him of the crime of being a convicted felon in possession of a firearm. Based on his initial statements that he possessed the rifle only momentarily to move it away from a one-year-old child, defendant contends he was entitled to have the jury instructed that necessity and transitory possession are defenses to the charge that he violated section 12021. We disagree.[1]

■ To justify an instruction on the defense of necessity, there must be evidence sufficient to establish that defendant violated the law (1) to prevent a significant evil, (2) with no adequate alternative, (3) without creating a greater danger than the one avoided, (4) with a good faith belief in the necessity, (5) with such belief being objectively reasonable, and (6) under circumstances in which he did not substantially contribute to the emergency. (*People* v. *Slack* (1989) 210 Cal.App.3d 937, 940 [258 Cal.Rptr. 702]; 1 LaFave & Scott, Substantive Criminal Law (1986) Justification and Excuse, § 5.4, pp. 627-640 (hereafter LaFave); 1 Wharton's Criminal Law (15th ed. 1993) Defenses, § 90, pp. 614-628 (hereafter Wharton); Perkins & Boyce, Criminal Law (3d ed. 1982) Impelled Perpetration, § 2, pp. 1064-1072 (hereafter Perkins).)[2]

■ The factual predicate for defendant's claim of necessity is insufficient as a matter of law to establish the elements of that defense. Viewing the evidence in the light most favorable to defendant, no exigent circumstance required him to take possession of the rifle. The purported evil he sought to avoid by doing so was a perceived danger to one-year-old Patrick. According to defendant's initial explanation to investigating officers, Patrick

[1]Defendant implies that, although Commander Knobelauch testified defendant admitted his initial explanation for possessing the rifle was a lie, it nonetheless is a sufficient factual basis for the instructions in question because the jury could have disbelieved that portion of Knobelauch's testimony. For purpose of discussion, we shall assume defendant's initial statements constitute a factual basis for determining whether he was entitled to the instructions

[2]"With the defense of necessity, the traditional view has been that the pressure must come from the physical forces of nature (storms, privations) rather than from human beings. (When the pressure is from human being, the defense, if applicable, is called duress rather than necessity.) However, the 'modern cases have tended to blur the distinction between duress and necessity.'" (LaFave, *op. cit. supra*, at p. 628; Perkins, *op. cit. supra*, at pp. 1064-1065, fns. omitted.)

was sitting on the floor of the bedroom watching television; defendant got Lewis's rifle, which was on the floor under the bed, in order "to put in a place so [Patrick could not] touch it." Nothing in the evidence suggests Patrick was attempting to touch the rifle or even was aware of its presence under the bed. Hence, there is no evidence that defendant's possession of the rifle was necessary to prevent significant harm to Patrick. Moreover, even if such potential harm existed, an adequate alternative was available to address the problem; defendant could have taken the children from the room and then had his sister move the weapon to a place of safety. And, as the tragic circumstances of this case illustrate, the potential for harm posed by defendant's purported effort to move a loaded gun in the presence of two small children was disproportionate to the harm he allegedly sought to avoid. (*People* v. *Slack, supra,* 210 Cal.App.3d at p. 940; LaFave, *op. cit. supra,* at pp. 627-640; Wharton, *op. cit. supra,* at pp. 614-628.)

Because defendant's initial explanation, if believed by the jury, is insufficient as a matter of law to satisfy the elements of a necessity defense, the trial court was not required to instruct on that defense. (Cf. *People* v. *Slack, supra,* 210 Cal.App.3d at pp. 943-944.)

Nevertheless, defendant contends he was entitled to an instruction that mere transitory possession of a firearm is insufficient to establish a violation of section 12021.

Defendant relies on *People* v. *Mijares* (1971) 6 Cal.3d 415 [99 Cal.Rptr. 139, 491 P.2d 1115], a case involving the charge of possessing heroin in violation of former Health and Safety Code section 11500 (hereafter section 11500). In that case, the appellant, Andrew Mijares, admitted possessing heroin but claimed he did so only momentarily for the sole purpose of putting an end to its unlawful possession by a friend, Johnny Rodriguez, who had overdosed on the narcotic. Mijares explained that, believing his friend needed medical help, he looked in Rodriguez's pocket and found the "narcotics outfit" containing heroin, which he thought might be there since Rodriguez recently had ingested the narcotic. Mijares threw the contraband out of the car and drove Rodriguez to a fire station to get medical assistance. (*People* v. *Mijares, supra,* at p. 419.) On appeal, Mijares argued ". . . the jury should have been instructed that if it believed he did not himself use heroin on the day in question or handle it in furnishing narcotics to Rodriguez but instead had no contact with the narcotic other than to remove it from Rodriguez' pocket for the purpose of disposal, such handling is insufficient for conviction of the crime of possession as defined by section 11500." (*Ibid.*) The Supreme Court agreed. At that time, section 11500

stated in pertinent part: "Except as otherwise provided in this division, every person who possesses any narcotic other than marijuana, except upon the written prescription of a physician, dentist, podiatrist, or veterinarian licensed to practice in this state shall be punished by imprisonment in the state prison . . . ." (Stats. 1970, ch. 1098, § 1, p. 1945.) The Supreme Court concluded the transitory possession of an illicit narcotic "for the sole purpose of putting an end to [its] unlawful possession [by another]" does not constitute "possession" within the meaning of section 11500. (*People* v. *Mijares, supra,* 6 Cal.3d at pp. 417, 419-420, 423.) Hence, "[t]he jury should have been instructed that the possession prohibited by section 11500 . . . does not include merely handling for only brief moments prior to abandoning the narcotic." (*Id.,* at p. 423.) The court reasoned that a contrary construction "could result in manifest injustice to admittedly innocent individuals." (*Id.,* at p. 422.) In effect, the court held that the Legislature could not have intended section 11500 to apply to one who momentarily possesses contraband solely to dispose of it in order to prohibit its illegal possession by another. (6 Cal.3d at p. 420.) Similarly, the statute could not have been intended to apply to one who handles contraband out of curiosity but abandons it as soon as the person realizes its illicit character. (*Id.,* at p. 422.)

The reasoning of *Mijares* is not applicable here. First, this is not a case where a convicted felon took possession of an object solely out of curiosity, not knowing its character as a firearm, and abandoned the gun as soon as he realized it was a firearm. Parenthetically, we note such a scenario is unlikely because, although the illicit nature of controlled substances may not be readily apparent (cf. *People* v. *Williams* (1971) 5 Cal.3d 211, 215 [95 Cal.Rptr. 530, 485 P.2d 1146]), the nature of a firearm ordinarily is obvious. In any event, the abandonment of an illicit object immediately upon recognition of its nature as contraband is not considered to be "possession" of the object for the purpose of criminal sanctions. (*People* v. *Mijares, supra,* 6 Cal.3d at p. 422.)

Second, this is not a case where a convicted felon possessed the rifle momentarily solely to prevent its illegal possession by another; and such possession nonetheless violates Penal Code section 12021. As a matter of public policy, the Legislature has made it a crime for convicted felons to possess firearms. (§ 12021, subd. (a)(1).) ■ The purpose of this law is to protect public welfare by precluding the possession of guns by those who are more likely to use them for improper purposes. (*People* v. *Bell* (1989) 49 Cal.3d 502, 544 [262 Cal.Rptr. 1, 778 P.2d 129].) Due to the potential for death or great bodily injury from the improper use of firearms, public policy generally abhors even momentary possession of guns by convicted felons

who, the Legislature has found, are more likely to misuse them. Criminalizing the transitory possession of firearms by convicted felons in circumstances that do not satisfy the elements of self-defense, defense of others, or legal necessity is not likely to result in "manifest injustice to admittedly innocent individuals." (Cf. *People* v. *Mijares, supra*, 6 Cal.3d at p. 422.) Unlike controlled substances which the general public is not permitted to have without specific authorization by law, firearms are lawful to possess subject to specific exceptions set forth by the Legislature (e.g. §§ 12020, 12021). Hence, the momentary handling of a firearm to prevent its illegal possession by another ordinarily would not subject a member of the general public to criminal sanctions. To the extent a convicted felon's transitory possession of a firearm for that purpose constitutes a crime, the law favors this result due to the grave threat to public safety posed by even the momentary possession of firearms by persons who, once in possession of guns, are more likely to use them for improper purposes. Balancing the competing evils, nothing is gained by permitting a convicted felon to possess a gun in order to prevent its unlawful possession by another, since the Legislature necessarily has found that the threat to public safety is the same under either circumstance.

 Accordingly, section 12021 prohibits a convicted felon from possessing a firearm even momentarily except in self-defense, in defense of others, or as a result of legal necessity. Because his taking hold of the rifle purportedly for the sole purpose of protecting a child from a perceived danger posed by the gun's presence does not satisfy the elements of any of these exceptions, defendant was not entitled to an instruction that his transitory possession of the gun for that purpose, if believed by the jury, would constitute a defense to the charge he violated section 12021.

Since defenses of necessity and transitory possession were not available to defendant as a matter of law, we reject his related claims that (1) his trial attorney was ineffective in failing to undertake further investigation of these defenses and to counter prosecution evidence that the gun could not have been fired in the manner suggested by defendant, (2) he received ineffective assistance of counsel when his trial attorney did not request instructions on the defenses, to which we have concluded he was not entitled (*People* v. *Constancio* (1974) 42 Cal.App.3d 533, 546 [116 Cal.Rptr. 910] ["It is not incumbent upon trial counsel to advance meritless arguments . . . merely to create a record impregnable to assault for claimed inadequacy of counsel."]), and (3) the evidence is insufficient to support his conviction for violating section 12021 because he possessed the rifle only momentarily in order to protect Patrick by moving the gun away from the child.

## II*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Disposition*

The judgment is affirmed.

Puglia, P. J., and Sparks, J., concurred.

---

*See footnote, *ante*, page 1029.