Filed 4/29/13  P. v. Vanderdorp CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>JUAN VANDERDORP,<br><br>      Defendant and Appellant. | B240117<br><br>(Los Angeles County<br>Super. Ct. No. BA384556) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stephen A. Marcus, Judge.  Affirmed.

Elana Goldstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, Nima Razfar, Deputy Attorney General, for Plaintiff and Respondent.

# INTRODUCTION

A jury convicted defendant and appellant Juan Vanderdorp of vandalism causing damage over $400 (Pen. Code, § 594, subd. (a)) and misdemeanor hit and run driving (Veh. Code, § 20002, subd. (a)). The trial court placed defendant on formal probation for a period of three years under various terms and conditions. Following a contested restitution hearing, the trial court ordered defendant to pay Talysa Wager $1,400 and Rupert Ouane $2,000.

On appeal, defendant contends that the trial court erred in excluding evidence that his victim previously attacked him, in denying his request for an instruction on the defense of necessity, and in awarding Wager $1,400 in restitution. We affirm the judgment.

# BACKGROUND

*People's Case*

Wager lived in and operated a hair salon in a converted garage. Defendant operated a clothing store across the street. Wager met defendant when she applied for a job at his clothing store. As of January 2011, Wager had known defendant for about four months and saw him almost every day. They never had a romantic relationship. Wager allowed defendant to park his van in her driveway on occasion.

About 10:30 p.m. on January 16, 2011, Alejandro Lucas picked up Wager for a date. During the date, Wager received a text message from defendant that stated, "I know that you're out on a date right now. I know you're sitting with somebody. I don't know why this hurts me so bad. I wish it was me." Later, Wager received a text message from defendant that asked if he could park his van in Wager's driveway and sleep in it. Wager wrote back, "This is inappropriate, and you can absolutely not park there."

About 1:00 a.m., the next morning, Lucas brought Wager home from their date. When they arrived at Wager's home, they found defendant's van parked in the driveway. Lucas parked on the street slightly behind defendant's van and asked Wager to wait in the car. He got out of the car, walked to defendant's van, and tapped on the driver's window.

Lucas introduced himself to defendant and asked defendant to back out of the driveway, telling him that he was not welcome there.

Defendant raised his voice and asked Lucas about the nature of his relationship with Wager. Lucas tried to de-escalate the situation by telling defendant, "Look, you live across the street. Just move your van across the street. She doesn't want you here. Can you please go home." Defendant appeared to be angry and yelled at Lucas. A neighbor came outside with a hammer and told defendant to move his van.

Wager got out of Lucas's car and walked to the van. She tapped Lucas on the shoulder and told him not to worry, that she would take care of the situation. She told the neighbor to go back inside. Lucas got in his car and moved it about 20 feet.

Wager said to defendant, "Juan, please move your car. You asked me if you could park here. I said absolutely no." Defendant told Wager "to go fuck" herself and said that he was not going to move his car. Wager told defendant that she would call the police if he did not move his car. Defendant screamed at Wager, calling her a "fucking whore." He said that Wager had seduced and put a spell on him. He said that Wager "made him do this." Wager said, "Please, you need to move your car."

Defendant said, "If I can't stay out here, I'm going in." He started the van and "plowed" into Wager's salon. About one fourth of the van entered the salon. The van stopped for about one to one and a half seconds, "revved," and proceeded further into the salon. At this point, about three quarters of the van had entered the salon. Defendant backed the van out of the driveway. Lucas described the manner in which defendant backed out as "very quick" and "very unsafe." Wager was furious that defendant had driven into her home. As defendant backed out of the driveway, Wager tried to "grab [defendant] or something." Wager admitted that she might have been trying to punch defendant. Wager's arm got stuck on the side view mirror and she ran as defendant dragged her about 20 yards before she separated from the van. Her arm was "completely" bruised. Defendant did not stop and exchange registration or other information with Wager. Instead, he drove off at a high rate of speed and did not return for two days.

3

*Defense Case*

Testifying in his own behalf, defendant said that he and Wager were friends and that he was not interested in her romantically. Defendant sometimes parked his van in Wager's driveway. Usually, he did not ask for permission to park there. Wager sometimes asked defendant to park his van in her driveway because the area was crime-ridden and the presence of defendant's van gave Wager a sense of security.

On the night of January 17, 2011, defendant sent Wager a text message saying that he was "going to probably sleep there that night." He did not ask if he could park his van in the driveway because that was "kind of like [his] parking spot." He parked there on Fridays, Saturdays, and Sundays. Wager sent defendant a message telling him that he could not park in her driveway. Nevertheless, defendant parked in the driveway and fell asleep.

At some point, Lucas knocked on the window and woke up defendant. Defendant rolled down the window half way. Lucas said to defendant, "I need you to move your van." Defendant replied, "Who the hell are you?" Lucas said, "Listen, guy. I need you to move your van." Lucas was impatient. Lucas reached in the van and tried to open the door, but defendant rolled up the window. Lucas's actions frightened defendant.

Wager approached and defendant realized that she and Lucas were together. Wager asked defendant to leave. According to defendant, Wager was intoxicated. Defendant said to Wager, "I see that you're drunk again." Wager responded, "That's none of your fucking business. I can lead my life any way I want." Wager said a few more things and defendant said, "Well, I guess we're going to have to deal with this when you're sober." Defendant did not say to Wager anything like "If I can't be out here in the driveway, I'm going to drive through," or that he was going to drive through or hit her house.

Defendant turned on his van intending to leave, but accidentally put the van into drive instead of reverse. The van hit the salon's front door and went about three feet inside the salon. Defendant backed the van out of the salon and stopped to "deal" with the situation. He did not drive farther into the salon. Defendant was looking at the

damage when Wager "punched" him in the face with an open hand. Although defendant was not injured in any way, the blow was forceful. After punching defendant, Wager grabbed defendant's ear and shirt. Wager was furious.

Defendant told Wager that he was leaving and asked her to let go of him. As defendant backed out of the driveway, Wager would not let go. Defendant conceded that it may have been unsafe for him to back out of the driveway, but said that he did not back out quickly because Wager was holding onto him. Defendant drove away. Defendant left because Wager had punched him and he was afraid of her and not because he had intentionally destroyed someone's property. Defendant thought it was "appropriate" to leave because he was being attacked—Lucas had previously tried to open defendant's van, a man was waving a hammer, and a woman was trying to strangle him.

Defendant had a cell phone with him during the incident, but did not call the police until between 3:00 p.m. and 5:00 p.m. later that day. Defendant made an appointment to speak the following morning with the detective who had been assigned the case. Defendant told the detective what had happened. Three days later, defendant spoke with the owner of the house and gave him defendant's insurance information. Defendant admitted that he drove the van into the house, that the damage to the house was greater than $400, and that he left the scene without providing insurance information to anyone.

## DISCUSSION

### I.    Exclusion of Evidence of Wager's Prior Physical Fight With Defendant

Defendant contends that the trial court erred when it denied his motion to introduce evidence of Wager's prior physical fight with defendant. Such evidence, defendant argues, would have supported his claim that he left after driving into the garage because he was afraid of Wager. Defendant forfeited review of this issue by failing to renew his request that the evidence be admitted after Wager testified and press the trial court for a final ruling.

5

Prior to trial, defense counsel requested permission to introduce evidence of a prior physical fight between Wager and defendant if the prosecution called Wager as a witness. The fight took place one month prior to the incident in which defendant drove into Wager's garage. Defense counsel wanted to cross-examine Wager about the incident and call the police officers who responded to the fight and took a report. The evidence was relevant, defense counsel argued, to show that Wager had a tendency to react violently when confronted and that she had so reacted one month prior when she injured defendant.

The trial court stated that Wager's alleged prior criminal conduct did not appear to be very probative or relevant to Wager's credibility or why defendant drove into the house. The trial court asked if there were something about Wager's and defendant's relationship that would show the relevance of the evidence. Defense counsel stated that Wager and defendant had a relationship as neighbors that had soured over time to the point that one month prior to the incident in this case Wager physically attacked defendant while under the influence of drugs and alcohol. Defense counsel stated that Wager was under the influence of drugs and alcohol during the incident in this case.

The trial court stated, "I'll tell you what. My ruling is you cannot introduce that evidence nor ask her that question for impeachment purposes. However, I will await her testimony. I will await some of your cross. I'll keep that in mind. And if in my mind it becomes relevant, I'll either call you up, or I may say—again, I'd like to wait and see, when you present a defense, whether it becomes relevant. And you'll just have to keep those witnesses on call. Right now I'm saying no. 352, it doesn't come in."

"A tentative pretrial evidentiary ruling, made without fully knowing what the trial evidence would show, will not preserve the issue for appeal if the appellant could have, but did not, renew the objection or offer of proof and press for a final ruling in the changed context of the trial evidence itself. [Citations.] ""Where the court rejects evidence temporarily or withholds a decision as to its admissibility, the party desiring to introduce the evidence should renew his offer, or call the court's attention to the fact that

6

a definite decision is desired.""" [Citation.]" (*People v. Holloway* (2004) 33 Cal.4th 96, 133; *People v. Ennis* (2010) 190 Cal.App.4th 721, 735-736.)

The trial court made its pretrial evidentiary ruling expressly acknowledging that it did not know fully what the evidence adduced at trial would show. It stated that it would reconsider its ruling in light of Wager's testimony. Accordingly, it was defense counsel's obligation to renew his request that the evidence be admitted and press for a final ruling after Wager testified in order to preserve the issue for appeal. (*People v. Holloway, supra,* 33 Cal.4th at p. 133.) Defense counsel's failure to do so forfeited appellate review of the issue. (*People v. Ennis, supra,* 190 Cal.App.4th at pp. 735-736.)

## II.     The Defense of Necessity Instruction

Defendant contends that the trial court erred when it denied his request to instruct the jury with CALCRIM No. 3403[1] on the defense of necessity with respect to the hit and run charge. The trial court did not err.

During a discussion of jury instructions, defense counsel requested the trial court to instruct the jury with CALCRIM No. 3403 on the defense of necessity as to the hit and

---

[1]     CALCRIM No. 3403 provides:
"The defendant is not guilty of <insert crime[s]> if (he/she) acted because of legal necessity.
"In order to establish this defense, the defendant must prove that:
"1.     (He/She) acted in an emergency to prevent a significant bodily harm or evil to (himself/herself/ [or] someone else);
"2.     (He/She) had no adequate legal alternative;
"3.     The defendant's acts did not create a greater danger than the one avoided;
"4.     When the defendant acted, (he/she) actually believed that the act was necessary to prevent the threatened harm or evil;
"5.     A reasonable person would also have believed that the act was necessary under the circumstances;
"AND
"6.     The defendant did not substantially contribute to the emergency.
"The defendant has the burden of proving this defense by a preponderance of the evidence. This is a different standard of proof than proof beyond a reasonable doubt. To meet the burden of proof by a preponderance of the evidence, the defendant must prove that it is more likely than not that each of the six listed items is true."

run charge. The trial court denied the request, finding that it was not supported by substantial evidence. The trial court reasoned that defendant substantially contributed to the "whole problem" by driving into the garage, a reasonable person would not believe that the act of driving away was necessary under the circumstances—i.e., defendant testified that Wager did not injure him when she hit him, and the act of driving away may have created a greater danger than the danger avoided.

"'The necessity defense is very limited and depends on the lack of a legal alternative to committing the crime. It excuses criminal conduct if it is justified by a need to avoid an imminent peril and there is no time to resort to the legal authorities or such resort would be futile.' [Citation.] 'By definition, the necessity defense is founded upon public policy and provides a justification distinct from the elements required to prove the crime.' [Citation.] 'Necessity does not negate any element of the crime, but represents a public policy decision not to punish such an individual despite proof of the crime.' [Citation.]" (*People v. Verlinde* (2002) 100 Cal.App.4th 1146, 1164.)

"To justify an instruction on the defense of necessity, there must be evidence sufficient to establish that defendant violated the law (1) to prevent a significant evil, (2) with no adequate alternative, (3) without creating a greater danger than the one avoided, (4) with a good faith belief in the necessity, (5) with such belief being objectively reasonable, and (6) under circumstances in which he did not substantially contribute to the emergency." (*People v. Pepper* (1996) 41 Cal.App.4th 1029, 1035.) A trial court must instruct on the defense of necessity when there is sufficient evidence from which a reasonable juror could find each element of the defense by a preponderance of the evidence. (*People v. Verlinde, supra,* 100 Cal.App.4th at p. 1165; *People v. Pepper, supra,* 41 Cal.App.4th at p. 1036; CALCRIM No. 3403.)

Sufficient evidence did not justify an instruction on the defense of necessity. First, defendant had an alternative to fleeing the scene. He could have pulled out of the driveway, parked nearby, and called the police. Instead he drove away and did not call the police until, at the earliest, some 14 hours later at 3:00 p.m. that day. Second, defendant substantially contributed to the emergency by parking without permission in

8

Wager's driveway and driving into Wager's garage. Accordingly, the trial court did not err in denying defendant's request to instruct the jury with CALCRIM No. 3403. (*People v. Verlinde, supra,* 100 Cal.App.4th at p. 1165; *People v. Pepper, supra,* 41 Cal.App.4th at p. 1036.)

## III. Cumulative Error

Defendant contends that even if the prejudicial effect of either the trial court's error in excluding evidence of Wager's physical fight with defendant or the prejudicial effect of its error in denying his request to instruct the jury with CALCRIM No. 3403 on the defense of necessity does not merit reversal on its own, the cumulative prejudicial effect of those errors merits reversal. Because defendant forfeited review of his claim that the trial court erred in excluding evidence of Wager's prior physical conduct with respect to defendant and the trial court properly denied defendant's request to instruct on the defense of necessity, there is no cumulative prejudicial effect that justifies reversal.

## IV. Wager's Restitution Award

Defendant contends that the trial court abused its discretion in awarding Wager $1,400 in restitution because it did not make a clear statement of how it calculated the award. Instead, defendant contends, because Wager proved only $930 in property damage the trial court's restitution award should be reduced to $930. We disagree.

We review a trial court's restitution award for an abuse of discretion. (*People v. Giordano* (2007) 42 Cal.4th 644, 663.) "Under this standard, while a trial court has broad discretion to choose a method for calculating the amount of restitution, it must employ a method that is rationally designed to determine the surviving victim's economic loss. To facilitate appellate review of the trial court's restitution order, the trial court must take care to make a record of the restitution hearing, analyze the evidence presented, and make a clear statement of the calculation method used and how that method justifies the amount ordered." (*Id.* at pp. 663-664.) "The point is to show the award is the product of a 'reasonable' method and produces a 'nonarbitrary result.'" (*People v. Pangan*

9

(2013) 213 Cal.App.4th 574, 579, citing *People v. Giordano, supra,* 42 Cal.4th at p. 665.)
"No abuse of discretion is shown simply because the order does not reflect the exact amount of the loss, nor must the order reflect the amount of damages recoverable in a civil action. [Citation.]" (*People v. Akins* (2005) 128 Cal.App.4th 1376, 1382.)

At the sentencing hearing, the prosecutor requested $2,500 in restitution for Wager for her property that was damaged when defendant drove into her salon. Defendant requested a contested restitution hearing. Because Wager was present at the sentencing hearing, the trial court took her testimony as to the value of her damaged property so that she might avoid having to attend the restitution hearing. Wager testified that all her best clothes, and her shoes, linens, towels microwave, love seat, salon chair, cabinet, and dishes were damaged. The trial court asked Wager to place a price on those items. Wager said that she placed a minimum value on the property of $2,500, but that she was not then able to put a price on each item.

On cross-examination, defense counsel asked Wager to identify articles of clothing that had been damaged. Wager said that her shoes were broken and identified a pair of Chanel shoes. She said that defendant also damaged 30 to 40 dresses and 10 to 15 blazers. A dress for which she had paid $380 was ripped. Wager estimated that her love seat was worth $250, her dishes were worth $200, and her microwave was worth $100. The trial court observed that dresses are expensive and that it was inclined to grant an award between $2,000 and $2,500. The trial court stated that it would set the final amount at the restitution hearing, that it would take Wager's testimony into account, and that Wager could provide the prosecutor with "a list" or photographs if she wished.

At the restitution hearing, the prosecutor informed the trial court that he had spoken with Wager and that she did not want to attend the restitution hearing and "give any further lists." He said that Wager did not want to have further contact with defendant and asked that any restitution award be donated to the victim restitution fund. The trial court stated that it would not order any award to be donated to the fund.

Defense counsel then contended that defendant did not owe any restitution to Wager. Defense counsel argued that Wager was unemployed, had put "all of her stuff in

10

storage," and did not own "fancy" dresses as she claimed. Defense counsel further argued that a photograph from the trial showed a rack of clothes that was still standing after defendant drove his van into the salon thus proving that the van did not hit the clothes.

The trial court awarded Wager $1,400 in restitution stating, "I do think she overestimated the damages to her dresses and so forth, but she also mentioned things like microwaves and dishes and other items. I mean, he drove a van through this lady's house, which happened to be a garage, but needless to say, he's accountable for that. So to come in and say he shouldn't owe anybody restitution after doing that, I'm kind of stunned."

Wager testified that defendant damaged her clothes, shoes, linens, towels microwave, love seat, salon chair, cabinet, and dishes. Wager placed a minimum total value of $2,500 on the damaged property, with a value of $380 for one of her dresses, $250 for her love seat, $200 for her dishes, and $100 for her microwave. The trial court's award of $1,400 was not an abuse of discretion because it rationally may be calculated as an award of $930 for damage to the identified dress, love seat, dishes, and microwave and an award of $470 for the discounted value of Wager's remaining damaged property. (*People v. Giordano, supra,* 42 Cal.4th at pp. 663-665; *People v. Pangan, supra,* 213 Cal.App.4th at p. 579; *People v. Akins, supra,* 128 Cal.App.4th at p. 1382.)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


                                MOSK, J.


We concur:



        ARMSTRONG, Acting P. J.



        KRIEGLER, J.