Filed 7/17/14  P. v. McGehee CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MARCEL MCGEHEE,<br><br>    Defendant and Appellant. | B250781<br><br>(Los Angeles County<br>Super. Ct. No. PA073511) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Daniel B. Feldstern, Judge.  Affirmed.

Law Office of Alan Goldberg and Alan M. Goldberg for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr., and Stephanie A. Miyoshi, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Appellant Marcel McGehee appeals a judgment following his conviction for possession of a firearm and ammunition by a felon, arguing (1) the trial court abused its discretion in refusing a day-of-trial request to discharge his retained counsel and continue trial so he could retain a new attorney; (2) he did not voluntarily admit his prior convictions; and (3) his counsel was ineffective in various respects. We affirm.

## PROCEDURAL HISTORY

Appellant was charged with four counts: (1) transportation of marijuana (Health & Saf. Code, § 11360, subd. (a)), (2) possession of concentrated cannabis (Health & Saf. Code, § 11357, subd. (a)), (3) possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1)),[1] and (4) possession of ammunition by a felon (§ 30305, subd. (a)(1)). Prior to trial, the court dismissed the drug counts on the prosecution's request, and appellant waived his right to a jury trial on his prior convictions and the parties stipulated he had two. A jury convicted him of the remaining felon-in-possession counts. The court sentenced him to the midterm of two years on the firearm count and a concurrent midterm of two years on the ammunition count. He timely appealed.

## STATEMENT OF FACTS

On April 13, 2012, around 1:30 p.m., Los Angeles County Sheriff's Deputy James Peterson monitored traffic from a marked patrol vehicle parked on the southbound side of the Interstate 5 freeway just north of the City of Castaic. At the time it was raining. Deputy Peterson saw appellant drive by in a brown Chevrolet sedan (which he would later determine was a rental car) with a female passenger. Appellant was driving without his headlights and changed lanes without signaling, which were violations of the Vehicle Code, so Deputy Peterson initiated a traffic stop. Deputy Brian Rooney arrived as backup and the officers searched the vehicle.[2] They discovered a size "4XL" hooded sweatshirt in the back seat with a Glock pistol in the front pocket loaded with 13 rounds of live ammunition.

---

[1]     All further statutory references are to the Penal Code unless otherwise noted.

[2]     At the preliminary hearing and during a pretrial hearing on a motion to suppress, Deputy Peterson testified he smelled unburned marijuana in the car, which prompted

Deputy Peterson arrested appellant, who was a "fairly large gentleman" at six feet four inches tall, weighing approximately "320, 330 pounds." In contrast, the female passenger was approximately five feet four or five inches tall, weighing around "130, 140 pounds." Deputy Peterson ran the serial number on the gun in a Department of Justice database, but uncovered no record of a dealer sale.

The parties stipulated appellant had suffered a prior felony conviction. Appellant presented no evidence.

## DISCUSSION

### 1. *Request to Discharge Retained Counsel; Waiver of Jury Trial on Priors*

Appellant challenges the trial court's denial of his day-of-trial request to discharge his retained counsel and continue trial so he could retain a new attorney. In a related argument, he claims his waiver of his jury trial right for his prior convictions was not knowing and voluntary, which occurred within the discussion of his request to discharge his retained counsel. We reject both contentions.

### A. *Proceedings*

At the preliminary hearing, appellant was represented by counsel retained only for that hearing. On February 21, 2013, appellant appeared in propria persona for his arraignment and requested a continuance to hire a private attorney. A week later, appellant appeared in court represented by a private attorney.

On Friday, July 12, 2013, appellant appeared before the court with his attorney to discuss any final possibilities for settlement. The court noted trial was set for the following Tuesday, July 16, 2013, and if the case did not settle, the trial would proceed on that date. Appellant rejected the prosecution's settlement offer and acknowledged trial would go forward on the date set. The court ordered a jury panel and anticipated jury selection would begin on that date.

---

officers to conduct the search. Officers found a mason jar of marijuana, a pill bottle containing cannabis (or hash), and an unburned marijuana cigarette in the passenger area. After the prosecution dismissed the drug counts, none of that evidence was introduced at trial.

The morning of July 16, 2013, however, defense counsel informed the court appellant had informed her the prior day that he wanted to retain a new attorney. Appellant confirmed he wanted to hire new counsel. The court responded, "So you were in my court on July 12th, knowing that there was a trial date today, and you waited until yesterday to tell . . . ." Appellant interrupted, "No, I came -- It was just Friday. I didn't know all this legal matter and how everything, the actual stuff. Once I found out, I made it over the weekend. So the quickest I was able to contact an attorney was Monday, and I have an appointment actually today as soon as I get out of here go talk with one person." The court asked if he had retained anyone yet, and appellant responded, "As of today as soon as I go meet him, I can." When asked again, he conceded he had not retained anyone.

The court suggested if appellant had another attorney ready to start trial that day, "[t]here would not be any further delay in the proceedings," but "[t]here is no record in this file that you've made this request previously, that this is just really just a last-minute request." Even though appellant had his current counsel for months, the court noted appellant was "raising this issue on the actual trial date." When the court asked what new information he had obtained, appellant said, "[T]his is the actual trial date, that we're proceeding to trial." The court reminded him that it had said on the previous Friday that the trial was proceeding on July 16, 2013, "[s]o I can't account for you not listening, but you were paying attention. I was clear on that. I don't believe what you're saying right now, I'm sorry to say. I believe you knew that today was the trial date. And to say anything otherwise would be that you closed your ears during the entire proceeding on July 12th. [¶] So, again, any attorney that you would hire today would be requesting additional time to prepare for trial. And that's what makes this untimely, your asking for this. I first learned about it just now, and we have a trial set for today and it's not timely. And so I'm not going to relieve your attorney today who is prepared for your trial because on the very last minute you decide that you want someone else." In response, appellant denied his counsel was prepared for trial "because I haven't retained her for trial." The court noted she was the attorney of record for him. The court ultimately denied appellant's request, finding no "good cause to continue, if that's [appellant's] request, for the purpose of hiring a new

4

lawyer. The court believes that his request here made today, first time on the record, is untimely and there has been no previous request for change of counsel since [his counsel] has been representing him."

When the parties returned from the lunch break, the issue arose again when the court broached the subject of appellant's prior convictions with counsel, suggesting appellant could stipulate to them to avoid the prosecution having to prove them to the jury, which would otherwise allow the jury to learn the basis of the prior convictions. Because appellant had not yet discussed the issue with his attorney, the court gave him time to do so. The court explained in some detail the benefit of stipulating to a prior conviction, that is, avoiding "some prejudice" if the jury learned the basis of the prior convictions. The court also explained, however, that by stipulating that they exist, appellant would be giving up his right to a jury trial on that issue.

Appellant affirmed several times he understood, and he conferred with his attorney, but he "wanted the record to reflect" his Sixth Amendment right to "proper counsel" was being violated. The court said, "You hired this lawyer. She's privately retained by you." Appellant responded, "Yes." Because appellant was making a "very generalized allegation about her," the court asked what she was "not doing that she's supposed to do?" Appellant said, "I don't feel she's representing me in the way that I need to be represented properly for trial . . . ." The court asked appellant's counsel if she was ready to proceed with trial, and she responded she was.

The court returned to the topic of stipulating to the prior convictions, and appellant reiterated that he could not stipulate without being able to speak with his new counsel and he felt his Sixth Amendment right was being violated. Appellant and his counsel conferred, and the court overheard their discussion. It explained, "You're objecting to this attorney being the one to represent you. I've already overruled your objection. So I think you need to be realistic. You can cooperate with her and help her defend you, or you can resist and keep telling me that you object on Sixth Amendment grounds. I've already overruled that. She is your lawyer, she's prepared, and she's going forward." The court asked again about a stipulation, and appellant wanted the prosecutor to prove the priors, which his counsel

5

indicated was against her advice. When the court pressed appellant to state his decision on the record, appellant responded, "Once again, without being able to have proper counsel to know like what's going on, I wouldn't know how to answer that." The court reiterated, "I believe you do have proper counsel. I believe that she can advise you."

Appellant still refused to stipulate, so the court asked his counsel what she recommended to him. Counsel explained she advised him to stipulate, but he did not want to take that advice. The court observed appellant "at this point . . . is in a very uncooperative mood right now, not only with me as the court, but with his counsel. [¶] And I'm just going to make this as clear as I can. Your trial is starting in moments. This is not the first case I've ever handled, this is not the first criminal defendant who has resisted various aspects of a criminal trial. What I can tell you is that in every case it hurts the defendant. It does not help. So I'm trying to emphasize this because it's not too late for you to make good decisions about how this case is going to proceed, in light of the fact that we are going forward over your objection about your representation. [¶] You strike me as intelligent enough. Okay? So if you want—but intelligence is only as useful as the mind that's working with it; and if you are of a mind not to cooperate and just not respond to my questions, that's your business. I won't force you to. But I do not have a stipulation at this point, and therefore the jury will hear what your prior convictions were for, unless there is a stipulation. So you can keep the same response if you wish, but we're not really—I don't have a stipulation."

Appellant again conferred with his counsel and indicated he wanted to consult his family for advice. The court denied the request because there was no time and the jury was ready to enter. The court asked if appellant had enough time to consult his attorney, and he said he did. He then agreed to admit the prior convictions. The court advised appellant at length about the rights he would be waiving, including his right to a jury trial. Appellant stated he understood his rights, waived them, and admitted two prior convictions. His counsel joined. The court found appellant had "expressly, knowingly, understandingly, and intelligently waived his right to a jury trial" on his prior convictions and the parties stipulated to them.

6

*B. Request to Discharge Retained Counsel and Continue Trial*

We review the trial court's denial of appellant's request to discharge his retained counsel and continue the trial to retain new counsel for abuse of discretion. (*People v. Maciel* (2013) 57 Cal.4th 482, 512 (*Maciel*) [discharge retained counsel]; *People v. Pigage* (2003) 112 Cal.App.4th 1359, 1367 [continuance].)

"'The right to retained counsel of choice is—subject to certain limitations—guaranteed under the Sixth Amendment to the federal Constitution.'" (*Maciel, supra*, 57 Cal.4th at p. 512.) "'The right to discharge a retained attorney is, however, not absolute. [Citation.] The trial court has discretion to "deny such a motion if discharge will result in 'significant prejudice' to the defendant [citation], or if it is not timely, i.e., if it will result in 'disruption of the orderly processes of justice . . . .'"'" (*Ibid.*) Similarly, a continuance for the purpose of retaining counsel "may be denied if the accused is 'unjustifiably dilatory' in obtaining counsel, or 'if he arbitrarily chooses to substitute counsel at the time of trial.' [Citation.] [¶] However, 'a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality.' [Citation.] For this reason, trial courts should accommodate such requests—when they are linked to an assertion of the right to retained counsel—'to the fullest extent consistent with effective judicial administration.'" (*People v. Courts* (1985) 37 Cal.3d 784, 790-791.) Nevertheless, "[w]here a continuance is requested on the day of trial, the lateness of the request may be a significant factor justifying denial absent compelling circumstances to the contrary." (*People v. Jeffers* (1987) 188 Cal.App.3d 840, 850 (*Jeffers*).)

Given that appellant sought to discharge his retained attorney on the morning of jury selection and had not yet retained a new attorney prepared to move forward with trial, the trial court did not abuse its discretion in finding his request untimely. (*People v. Keshishian* (2008) 162 Cal.App.4th 425, 429 (*Keshishian*) [affirming denial of day-of-trial discharge request when defendant explained he "'lost confidence'" in his retained attorney because the case had been pending for two and a half years, an indefinite delay was necessary, and defendant had not identified or retained new counsel]; *People v. Hernandez* (2006) 139 Cal.App.4th 101, 109 [suggesting denial of a request to discharge retained counsel "almost

7

immediately before jury selection was to begin" would have been proper because it was "almost inconceivable that the public defender (or alternate counsel) would be able and willing to defend the case without a material postponement of the trial date"]; *Jeffers, supra*, 188 Cal.App.3d at pp. 850-851 [affirming denial of day-of-trial continuance because defendant's current attorney was ready, defendant had five months to retain new counsel if he desired, and witnesses would have been inconvenienced].)

While appellant claims to have notified the court about his desire to discharge his counsel as soon as was practicable because a "rift" occurred with his attorney over the weekend between July 12, 2013, and the start of jury selection on July 16, 2013, the record belies that assertion. When asked what new information he had obtained over the weekend, appellant said only, "[T]his is the actual trial date, that we're proceeding to trial." And when pressed, appellant asserted the "very generalized allegation" that she was not representing him "properly" for trial. Counsel herself affirmed she was ready to proceed to trial, suggesting appellant's request was a delaying tactic in the face of an imminent trial, not a legitimate complaint about his counsel's representation. (See *People v. Turner* (1992) 7 Cal.App.4th 913, 919 [finding "the vagueness of [the defendant's] complaints supported the [trial] court's apparent finding that the motion was motivated not by any genuine dissatisfaction with counsel but by a desire to delay the trial"].) The trial court did not believe appellant's last-minute complaints, a credibility finding we will not disturb on appeal.

Appellant's request could have also significantly delayed trial. Appellant claimed he had an appointment with a new attorney that afternoon, but he had not retained that attorney and there was no assurance after the meeting he would have. Even if he had, this new attorney surely would have required some time to prepare for trial. While appellant now suggests that a new attorney would have only needed two weeks, that is at odds with his contention that his retained attorney was ineffective for, inter alia, failing to retain and call expert witnesses (discussed below). If, as appellant suggests, his new attorney would have been required to explore expert witnesses and other avenues of evidence, a significant delay would have ensued.

Appellant argues the trial court inadequately explored the reasons for his request, but further inquiry was unnecessary. In discharging retained counsel, a defendant is "not required to demonstrate 'inadequate representation by his retained attorney, or to identify an irreconcilable conflict between them.'" (*Maciel, supra*, 57 Cal.4th at p. 512.) In fact, a hearing "at which the court determines whether counsel is providing adequate representation or is tangled in irreconcilable differences with the defendant is '"[an] inappropriate vehicle in which to consider [the defendant's] complaints against his retained counsel."'" (*Keshishian, supra*, 162 Cal.App.4th at p. 429.)

Thus, the trial court did not abuse its discretion in denying appellant's request to discharge his retained counsel and continue the trial for him to retain new counsel.

*C. Waiver of Jury Trial on Priors*

Appellant challenges his waiver of his right to a jury trial on his prior convictions, which occurred in the midst of his request to discharge his retained counsel. He advances several arguments, but we are not persuaded. First, any issue with his waiver is beside the point because the trial court could have accepted the stipulation to his status as a felon for the purpose of the felon-in-possession charges without advising him of his right to a jury trial and taking a waiver. (See *People v. Newman* (1999) 21 Cal.4th 413, 422-423.) Second, appellant contends he did not have sufficient time to discuss the matter with his attorney, but the stipulation was a tactical decision, so his attorney could have entered it on his behalf, even if he had been fully advised and disagreed. (*People v. Harris* (1993) 14 Cal.App.4th 984, 990 ["It is well established that trial counsel has the right to control the proceedings and make tactical decisions which are contrary to the expressed wishes of his or her client."]; see *People v. Adams* (1993) 6 Cal.4th 570, 578 ["Evidentiary stipulations have long been recognized as tactical trial decisions which counsel has discretion to make without the express authority of the client."].) Finally, appellant contends the trial court coerced him into admitting his priors, but we have reviewed the record and find no coercion.

*2. Ineffective Assistance of Counsel*

"'In assessing claims of ineffective assistance of trial counsel, we consider whether counsel's representation fell below an objective standard of reasonableness under prevailing

professional norms and whether the defendant suffered prejudice to a reasonable probability, that is, a probability sufficient to undermine confidence in the outcome. [Citations.] A reviewing court will indulge in a presumption that counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy. Defendant thus bears the burden of establishing constitutionally inadequate assistance of counsel. [Citations.] If the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, an appellate claim of ineffective assistance of counsel must be rejected unless counsel was asked for an explanation and failed to provide one, or there simply could be no satisfactory explanation. [Citation.] Otherwise, the claim is more appropriately raised in a petition for writ of habeas corpus.'" (*People v. Carter* (2005) 36 Cal.4th 1114, 1189 (*Carter*).)

Appellant asserts a miasma of claims for ineffective assistance of counsel, none of which are meritorious. We assume the parties are familiar with the record and we only briefly address each claim below.

*A. Overall Performance*

Appellant claims his counsel failed to use "ancillary services" for his defense, most particularly the subpoena power to call an expert witness on when the headlights in his rental car illuminate. The record does not disclose why counsel chose not to use any "ancillary services" and there could have been tactical reasons not to, so we reject this claim. Further, appellant has not shown any prejudice because he failed to point to any exculpatory evidence that would have been uncovered if counsel had used "ancillary services." (*People v. Williams* (2013) 56 Cal.4th 630, 692-693 [failure to hire experts to analyze physical evidence was not prejudicial because defendant did not identify evidence that would have been uncovered]; *People v. Szadziewicz* (2008) 161 Cal.App.4th 823, 839 (*Szadziewicz*) [failure to subpoena witness not ineffective or prejudicial because record did not reveal witness's expected testimony].)

Relatedly, appellant claims his counsel failed to present a defense case-in-chief. Again, the record does not disclose why counsel chose to rely on attacking the prosecution's case, rather than presenting a defense case-in-chief, so we must reject this claim on direct

10

appeal. There are certainly tactical reasons for vigorously attacking the prosecution's case in lieu of presenting a case-in-chief and appellant has proffered no reason why it constituted ineffective assistance to do so in this case. (*Carter, supra*, 36 Cal.4th at pp. 1189-1190.)

*B. Pretrial Performance*

In a single sentence, appellant claims his counsel failed to file a motion pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531, in order to obtain discovery related to officer complaints. The record does not disclose that any such complaints plausibly existed or, if they did, why counsel would have chosen (or forgone) the filing of a *Pitchess* motion to obtain them, so we reject this claim.

Appellant claims his attorney filed an "incompetent" pretrial motion to suppress pursuant to section 1538.5.[3] However, the motion adequately set forth a prima facie case that the police acted without a warrant, triggering the prosecution's burden to demonstrate a justification. (*People v. Williams* (1999) 20 Cal.4th 119, 136.) But even if the motion was inadequate, the issue was thoroughly addressed both at the preliminary hearing and in a pretrial hearing.

Also in conjunction with his motions to suppress, appellant contends his counsel (presumably both his preliminary hearing attorney and his trial attorney, although not entirely clear) failed to question Deputy Peterson about the level of visibility at the time of the traffic stop and failed to call an expert witness to testify to visibility and how the rental car's headlamps worked. As to the visibility issue, appellant has not identified what favorable testimony Officer Peterson or an expert would have given. (*People v. Datt* (2010) 185 Cal.App.4th 942, 952-953 (*Datt*) [failure to call expert witness not ineffective without showing trial counsel failed to consult expert, and if counsel did, whether expert would have given favorable testimony]; *Szadziewicz, supra*, 161 Cal.App.4th at p. 839.) Indeed, the

---

[3] Apparently, both appellant's preliminary hearing attorney and trial attorney filed motions to suppress, but only the motion filed by his trial counsel was included in the record on appeal. This was probably because appellant's preliminary hearing attorney withdrew the first motion at the end of the preliminary hearing and the court allowed appellant to renew it "in the next court if that's what you think is okay to do."

11

visibility issue appears to have been irrelevant. Deputy Peterson testified he pulled appellant over for driving without his headlights on while it was raining, which violated Vehicle Code section 24400, subdivision (b). That provision requires headlamps to be illuminated "during darkness, or inclement weather, or both," and "inclement weather" is defined as *either* "(1) A condition that prevents a driver of a motor vehicle from clearly discerning a person or another motor vehicle on the highway from a distance of 1,000 feet" *or* "(2) A condition requiring the windshield wipers to be in continuous use due to rain, mist, snow, fog, or other precipitation or atmospheric moisture." (Veh. Code, § 24400, subd. (c)(1)-(2).) Deputy Peterson testified at the preliminary hearing that it was raining heavy enough that day to have windshield wipers on, and he had his vehicle's windshield wipers on, as did most or all of the cars passing on the freeway. Because that satisfied Vehicle Code section 24400, subdivision (b) without regard to visibility, any additional evidence on visibility would not have changed the outcome of the suppression proceedings. As for calling an expert on the way in which his rental car's headlamps illuminate, appellant failed to demonstrate whether his counsel consulted an expert, and if so, whether the expert would have given favorable testimony. (*Datt, supra*, at pp. 952-953.) In any case, the record does not disclose the reasons for these tactical decisions, so we must reject these claims.

Appellant claims his counsel failed to further question appellant and Officer Peterson about appellant's lane change in violation of Vehicle Code section 22107. Appellant suffered no conceivable prejudice because his lack of headlights justified the stop, regardless of his lane change. But even if appellant's lane change was the basis for conducting the traffic stop, his claim still fails. Vehicle Code section 22107 provides, "No person shall turn a vehicle from a direct course or move right or left upon a roadway until such movement can be made with reasonable safety and then only after the giving of an appropriate signal in the manner provided in this chapter in the event any other vehicle may be affected by the movement." (Veh. Code, § 22107.) At the pretrial suppression hearing, the court asked appellant, "How close was the closest car to you at that time you made that lane change?" Appellant responded, "I don't know exactly what lane change he's talking

12

about, but it was traffic.  I was by semis.  I was in the slow lane."  The court asked, "So right before the officer stopped you, pulled you over, how would you describe the traffic around you?  Heavy, moderate, low?"  Appellant responded, "Moderate."  This testimony supported finding a violation of Vehicle Code section 22107, so appellant's trial counsel may have decided not to risk soliciting more unfavorable testimony from him or Deputy Peterson.  Because there could have been tactical reasons for this decision, we must reject this claim.

Appellant also contends his trial counsel incorrectly argued at the suppression hearing that appellant did not violate Vehicle Code section 22107 with his lane change because no other vehicles were affected, which prompted the court to correct her that the statute required only that other vehicles "may" be affected.  Appellant cannot possibly show prejudice because there was no evidence anyone, including the trial court, misunderstood the requirements of the statute.

Appellant contends his counsel should have called an expert witness on the issue of whether Deputy Peterson could have smelled marijuana outside appellant's rental car based on the unburned marijuana found in the passenger area.  But this claim fails because, as with his claim regarding a visibility and headlamps experts, appellant has not established his counsel failed to consult any experts, or if counsel did, whether those experts would have provided favorable testimony.  (*Datt, supra*, 185 Cal.App.4th at pp. 952-953.)

Appellant argues his trial counsel failed to adequately explain to him the difference between plea offers made before and after a preliminary hearing.  The record indicates the court asked whether counsel did, in fact, explain the difference to him, and he responded, "Yes, briefly."  Still, the court explained the difference on the record and asked if appellant understood, to which he responded, "Yes."  We find neither deficient performance nor prejudice.

Appellant contends his trial counsel improperly "brought up" the death certificate of appellant's grandfather in pretrial proceedings because it was irrelevant that appellant was traveling to his grandfather's funeral the day he was stopped.  Appellant never brought up

13

the death certificate during trial or offered it into evidence, so there was no possible deficient performance or prejudice.

*C. Jury Selection*

In another exceedingly brief contention, appellant claims counsel failed to challenge the panel of prospective jurors because it did not contain any African-Americans. Near the conclusion of jury selection, appellant's trial counsel objected to the composition of the jury because there were no African-American jurors on it. The court noted the jury as currently composed included male and female Hispanics and Asians, and that no African-American prospective jurors were apparently part of the panel of prospective jurors. The list of jurors was drawn from the wide geographic area of the district and the current panel "looks very much like the dozens and dozens of jury panels that I see here in this particular part of the county." The court overruled the objection because the "composition of this jury in its totality is a fair representation, notwithstanding the fact that there . . . do not appear to be any African-Americans."

In order to show a violation of the right to a jury selected from a "'fair cross section of the community,'" a defendant must show "'(1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.'" (*People v. Ramirez* (2006) 39 Cal.4th 398, 444.) Appellant has identified no facts to support the second and third requirements or, if he had, that any objection to the panel of prospective jurors would have been sustained. (*In re Seaton* (2004) 34 Cal.4th 193, 207 [rejecting ineffective assistance claim for failure to object to jury panel because defendant did not show an objection would have been sustained and failed to allege facts satisfying third prong].) Thus, appellant has shown neither ineffective assistance nor prejudice.

Appellant also contends his attorney failed to strike a juror who stated he or she had "a little issue" without elaborating. The juror ultimately stayed on the panel, stating, "I'll see how I make it." The court asked if either side wanted to question the juror, and neither

14

did. Appellant now speculates this juror may have "wanted off the panel because he was racist and knew it," but nothing in the record suggests at any point this or any other juror was biased. As a result, appellant has shown neither deficient performance nor prejudice.[4]

*D. Trial Performance*

Appellant argues his counsel should have presented a defense that he may have possessed the firearm for his protection or the protection of others. This claim is meritless. Self-defense may defeat a felon-in-possession charge only when there is evidence the defendant was "in imminent peril of great bodily harm or reasonably believes himself or others to be in such danger" (*People v. King* (1978) 22 Cal.3d 12, 24), and there was no such evidence in this case. Counsel was not deficient for failing to raise an inapplicable defense. (*People v. Pepper* (1996) 41 Cal.App.4th 1029, 1038.) For this reason, we also reject appellant's claim the lack of self-defense impacted his sentence.

Appellant contends his counsel improperly solicited testimony from Deputy Peterson on cross-examination that appellant's headlamps were not illuminated and failed to establish it was dark outside at the time of the stop. But counsel could not have been ineffective because by the time of trial these points were irrelevant to the felon-in-possession charges. These facts were pertinent to the motion to suppress, but the motion had already been denied. The only issue at trial was whether appellant was a felon in possession of a firearm or ammunition, which required proof that (1) appellant possessed a firearm or ammunition; (2) appellant knew he possessed the firearm or ammunition; and (3) appellant had previously been convicted of a felony. (§§ 29800, subd. (a)(1), 30305, subd. (a)(1).) Whether it was dark and whether appellant's headlamps were illuminated were at best background facts that could not have had an impact on the jury's verdict. We find neither ineffective assistance nor prejudice.

Appellant argues his counsel improperly asked Deputy Peterson on cross-examination who owned the sweatshirt containing the gun. We find no possible prejudice

---

[4]    Appellant also claims his attorney did not question jurors on bias, but that contention is purely speculative because the voir dire was not transcribed.

15

because, while counsel asked this question, Deputy Peterson never answered it. Instead, when asked whether he asked appellant who owned the sweatshirt, he responded, "No." The line of questioning stopped there. Thus, no damaging testimony was elicited in front of the jury.

Appellant also claims his counsel should have asked Deputy Peterson if Deputy Rooney asked appellant or his passenger who owned the sweatshirt. But appellant has not suggested what favorable testimony that question would have elicited, and in any event, during cross-examination, Deputy Rooney testified that no one told him the sweatshirt belonged to appellant. Again, appellant can show no prejudice.

Appellant claims his counsel made a deficient motion to dismiss pursuant to section 1118.1.[5] At the close of evidence, his counsel briefly argued that the evidence was insufficient, but the trial court disagreed. And rightly so, because there was substantial evidence to support a conviction: the firearm and ammunition were found in the car appellant was driving within his reach wrapped in a sweatshirt sufficiently large to fit him, which supported a reasonable inference that the sweatshirt belonged to him and he possessed the gun found inside it. (*Maciel, supra*, 57 Cal.4th at p. 522 [§ 1118.1 motion is properly denied when there is "'"'"substantial evidence of the existence of each element of the offense charged'"'"'"].) Appellant has not shown what additional information his counsel should have presented or whether it would have supported granting the motion. Hence, we find no deficient performance or prejudice.[6]

---

[5] Section 1118.1 states, "In a case tried before a jury, the court on motion of the defendant or on its own motion, at the close of the evidence on either side and before the case is submitted to the jury for decision, shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal. If such a motion for judgment of acquittal at the close of the evidence offered by the prosecution is not granted, the defendant may offer evidence without first having reserved the right."

[6] In his reply brief, appellant for the first time claims his counsel should have filed a new trial motion. We find this contention forfeited. (*People v. Clayburg* (2012) 211 Cal.App.4th 86, 93 [arguments raised for the first time in reply brief are forfeited].)

*E. Sentencing*

Finally, appellant claims counsel's sentencing brief was deficient because it did not expressly analyze mitigating factors. To the contrary, his counsel argued for the low or midterm for count three and for a concurrent term on count four, pointing out appellant had prior convictions but none for similar charges, he had never been in prison before, and the instant case arose from a "single period of aberrant behavior." The court partially agreed by imposing a concurrent midterm sentence on count four. The court explained it imposed the midterm sentence on count three because appellant had possessed a fully loaded gun and had a history of felony convictions. Appellant has not identified what arguments counsel failed to make or whether those arguments would have resulted in a more favorable sentence. Thus, we find no deficient performance or prejudice.

**DISPOSITION**

The judgment is affirmed.


FLIER, J.

WE CONCUR:


BIGELOW, P. J.


RUBIN, J.

17