Filed 3/13/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re KYLE T., | B267722 |
| a Person Coming Under the Juvenile Court Law. | (Los Angeles County Super. Ct. No. YJ37350) |
| THE PEOPLE, | |
| Plaintiff and Respondent, | |
| v. | |
| KYLE T., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Wayne C. Denton, Commissioner. Affirmed in part, reversed in part and remanded with directions.

Gerald Peters, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant

Attorney General, Margaret E. Maxwell and Tasha G. Timbadia, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

Kyle T. appeals from juvenile court adjudication and disposition orders.  The adjudication order declared Kyle a ward of the court and sustained a petition that the People filed under Welfare and Institutions Code section 602 alleging that Kyle had committed one count of felony vandalism (Pen. Code, § 594, subds. (a), (b)(1)) and one count each of misdemeanor vandalism (*id.*, subd. (b)(2)) and misdemeanor possession of an aerosol container with intent to vandalize (*id.*, § 594.1, subd. (e)(1)).  The disposition order directed that Kyle be placed in a suitable juvenile detention facility for a maximum of three years.

Kyle argues on appeal that there is insufficient evidence to support the juvenile court's finding on the felony vandalism count that Kyle caused $400 or more in property damage, which is the amount of damage necessary to punish vandalism as a felony rather than as a misdemeanor.  (Pen. Code, § 594, subd. (b)(1) & (2)).  We agree.  In our view, the People failed to present sufficient evidence, specific to Kyle's acts of vandalism, demonstrating that the actual amount of damage he caused reached the felony vandalism threshold of $400.  Therefore, we reverse the adjudication order in part and instruct the juvenile court to reduce the felony vandalism count to a misdemeanor vandalism count.  We also reverse the disposition order and

remand for a new disposition consistent with the reduction of the felony count to a misdemeanor.

## FACTUAL AND PROCEDURAL BACKGROUND

On the night of May 28, 2015, Los Angeles Police Department Officer Jonathan Chavez noticed what appeared to be fresh blue graffiti, also known as "tagging," on an abandoned building at 2231 South Barrington Avenue in Los Angeles that was owned by the City of Los Angeles (City).  Officer Chavez read the tagging to contain the word "Frost" or "Frosty," as well as the initials "JRH," and he estimated that the size of the tagging was two feet by three feet.  A passerby whom Officer Chavez encountered near that building pointed down the street and stated, "He's over there tagging now."  Based on the passerby's tip, Officer Chavez alerted other officers who were working in the area.  One of those officers, Gina Roh, found fresh blue tagging with the initials "JRH" on the south side wall of 2250 South Barrington Avenue, which also was City-owned.  Additionally, Officer Roh saw fresh blue spray paint with the word "Frost" at Hai's Liquor, a nearby store.  Officer Roh was uncertain of the size of the tagging at 2250 South Barrington Avenue and Hai's Liquor.

Later that same night, Officer Samuel Leon spotted Kyle walking along South Barrington Avenue and stopped him.  Kyle confessed to Officer Leon, "I did it.  I was painting the wall because I was bored."  Kyle showed Officer Leon his waistband, where he had a can of blue spray paint and a paint marker; Kyle had blue paint on his fingers as well.

3

On July 20, 2015, pursuant to Welfare and Institutions Code section 602, the People filed a three-count petition alleging Kyle, who was then 17 years old, had committed (1) felony vandalism by defacing with graffiti walls of properties owned by the City, causing damage to that property in an amount over $400 (Pen. Code, § 594, subd. (a); count 1); (2) misdemeanor vandalism by defacing with graffiti the wall at Hai's Liquor, causing damage to that property in an amount under $400 (*id*., subd. (a); count 2); and (3) misdemeanor possession of an aerosol paint container with the intent to deface (*id*., § 594.1, subd. (e)(1); count 3).

The adjudication hearing on the petition was tried in front of the juvenile court on September 22, 2015. Officer Miguel Barragan was the lone prosecution witness to testify whether, for purposes of the petition's felony vandalism count, the amount of damage that Kyle caused to the two City-owned properties on South Barrington Avenue was $400 or more.[1] Officer Barragan testified that he previously had handled vandalism cases and that part of his assignment is to determine the cost of repairing walls and other structures damaged by vandalism. The prosecutor asked him, "[H]ow is it that you go about determining the dollar amount of City property that needs to be repaired due to vandalism or tagging?" Officer Barragan answered, "[F]or City properties, we have a graffiti removal cost list. [¶] . . . [¶] It is issued by the [City] for my investigations on how to come up with estimates of removal of graffiti."

---

[1]     For purposes of the misdemeanor vandalism count, the juvenile court accepted the parties' stipulation that the amount of damage to Hai's Liquor was under $400.

4

With implicit reference to the dimensions of the tagging at 2231 South Barrington Avenue, the prosecutor asked Officer Barragan, "Does [the graffiti removal cost list] have a dollar amount for how much it costs to approximate [*sic*] a two- by three-foot tag on a wall?" "Yes," Officer Barragan answered. "What is that dollar amount?" the prosecutor asked. Kyle's counsel objected to that question on the grounds of hearsay and lack of foundation. The court overruled the objections, and Officer Barragan responded, "According to the graffiti removal cost list, it is $400 for each incident of removing graffiti." Applying that per-incident rate, Officer Barragan stated that it would cost a total of $1,200 to remove the three tags on the two City-owned properties (two tags on one wall at 2231 South Barrington Avenue and one tag at 2250 South Barrington Avenue).

On cross-examination, Officer Barragan stated that the graffiti removal cost list was one page long. He conceded that he did not prepare the list—someone else, whom he did not identify, prepared it. Nor was Officer Barragan able to explain how the list's cost removal determinations were made. Officer Barragan also conceded that he was unaware whether any repairs had been made to the two City-owned properties in question. Additionally, he conceded that he was unaware of the cost of materials to make the repairs. And he conceded that he did not know how long it would take to make the repairs and how many people would be needed to make them. Officer Barragan did say that he had visited the two properties as part of his investigation. But he acknowledged that his repair cost figures were based entirely on the graffiti cost removal list.

At the close of their case, the People did not offer into evidence the graffiti removal cost list, photographs of the tagging, or any other document.

After the People rested, Kyle's counsel made an oral motion to reduce the petition's felony vandalism count to a misdemeanor, "based on the testimony of the evaluation of the cost of repair." The court denied the motion.

Kyle did not testify or present any evidence in his defense. After the People waived closing argument, Kyle's counsel renewed his argument that the felony vandalism count should be reduced to a misdemeanor because any damage Kyle caused to the City-owned properties was less than $400. The court again denied the request. The court then proceeded to sustain the felony vandalism count, as well as the petition's two misdemeanor counts, and memorialized its findings in an adjudication order.

Following an October 19, 2015 disposition hearing, the juvenile court ordered Kyle suitably placed in a "Level 14 facility," with a maximum period of confinement of three years.[2]

Kyle's appeal was timely.

---

[2]    In rendering that disposition, the court aggregated the petition in this case with two prior petitions filed against Kyle, both of which resulted in Kyle admitting to allegations of vandalism in connection with settlements of the petitions. (See Welf. & Inst. Code, § 726, subd. (d); *John L. v. Superior Court* (2004) 33 Cal.4th 158, 183 [the juvenile court may aggregate terms of confinement for multiple Welf. & Inst. Code, § 602 counts or petitions, including previously sustained petitions].)

## **DISCUSSION**

A. *Standard of Review and Governing Law*

Our review of a claim of insufficiency of the evidence in a juvenile criminal case is governed by the same deferential standard that applies to an insufficiency of the evidence claim in an adult criminal case. (*In re V.V.* (2011) 51 Cal.4th 1020, 1026.) Under that standard, we determine whether, after viewing the evidence in the light most favorable to the prosecution, any reasonable fact finder could have found the elements of the crime to be true beyond a reasonable doubt. (*Ibid.*) We do not reweigh the evidence or reevaluate the credibility of witnesses (*People v. Jennings* (2010) 50 Cal.4th 616, 638); and we presume the existence of every fact the trier of fact reasonably could infer from the evidence (*In re V.V., supra*, at p. 1026). ""'A reasonable inference, however, 'may not be based . . . on imagination, speculation, supposition, surmise, conjecture or guess work.'"'" (*People v. Sifuentes* (2011) 195 Cal.App.4th 1410, 1416.)

Vandalism is proscribed by section 594 of the Penal Code. A person commits vandalism if he or she maliciously defaces with graffiti (or other inscribed material), damages, or destroys any real or personal property that is not his or her own. (*Id.*, subd. (a).) Vandalism may be punished as a felony, but only "[i]f the amount of defacement, damage, or destruction is four hundred dollars ($400) or more . . . ." (*Id.*, subd. (b)(1).) Damage of less than $400 is punishable solely as a misdemeanor. (*Id.*, subd. (b)(2).)

7

B.     *The Evidence Was Insufficient To Support the Felony Vandalism Finding*

Kyle contends that there is insufficient evidence to support the juvenile court's felony vandalism finding that he caused $400 or more in damage to the two City-owned properties that were the subject of the felony vandalism count.[3]  Kyle is right.  The People failed to present individualized proof, specific to the facts of this case, that the actual amount of damage that Kyle's vandalism caused reached the $400 threshold necessary to sustain the felony vandalism count.

Penal Code section 594 does not itself specify a method for proving the amount of property damage in a vandalism prosecution, and there are no reported decisions on that subject. By contrast, there are "two statutory approaches," and reported decisions analyzing those approaches, for determining the amount of a restitution award arising from the abatement of juvenile vandalism of property.  (*Luis M. v. Superior Court* (2014) 59 Cal.4th 300, 307 (*Luis M.*).)  First, section 730.6, subdivision (h) of the Welfare and Institutions Code "authorizes full restitution for economic losses, including 'the *actual cost* of repairing [damaged] property when repair is possible.'  ([Welf. & Inst. Code,] § 730.6, subd. (h)(1) . . . .)  Awards under [Welfare and Institutions Code] section 730.6 are based on proof of the damage actually linked to *the minor's conduct . . . .*"  (*Luis M.,* at p. 307.)  This method for determining restitution arising from the abatement of juvenile vandalism "parallel[s]" the method for

_____

[3]     Kyle does not dispute that he committed acts of vandalism—he contends only that those acts did not rise to the level of felony vandalism.

8

determining restitution arising from the abatement of adult vandalism set forth in Penal Code section 1202.4, subdivision (f). (*Luis M.*, at p. 304; see Pen. Code, § 1202.4, subd. (f)(3)(A) [restitution shall be of a dollar amount sufficient to fully reimburse the victim for every determined economic loss "incurred as the result of the defendant's criminal conduct"; the "value of . . . damaged property shall be . . . the actual cost of repairing the property when repair is possible"].)  Second, the Graffiti Removal and Damage Recovery Program (Welf. & Inst. Code, § 742.10 et seq.) authorizes restitution "based on the average costs for graffiti investigation and remediation per unit of measure," provided that criteria set forth in Welfare and Institutions Code section 742.14 are met.  (*Luis M.,* at p. 307.)

As the People acknowledge, the standard of proof in a restitution case is less exacting than the standard of proof in a vandalism case.  Thus, failure to meet the lower restitution standard would, by definition, mean failure to meet the standard of proof of the underlying crime.  Here, the evidence of property damage that the People presented does not satisfy either the "actual cost" or "average cost" method for determining restitution awards.

1.  *The People Provided Insufficient Evidence of the Actual Cost To Repair the Property Damage Kyle Caused*

The most obvious way for the People to prove that Kyle committed felony vandalism would have been to introduce at the adjudication hearing an invoice setting forth the actual cost of repairs to the two properties.  No such evidence was introduced.  The absence of an invoice may have been because the City had

9

not completed repairs as of the hearing date. Indeed, Officer Barragan testified he did not know whether that work had been done. Had the People introduced an invoice showing actual repair costs of $400 or more, properly authenticated the invoice, and laid a proper foundation, the trial court could have found that Kyle committed felony vandalism and we would not have disturbed that finding.

This is not to say that it was necessary for the City already to have made repairs in order for the trial court to find felony vandalism—a contractor's estimate of the cost to repair the actual damage that Kyle caused might have sufficed, again assuming proper authentication and foundation. But the People offered no such estimate either.

The one-page graffiti cost removal list formed the basis of Officer Barragan's damages calculation. Because the People did not introduce the list itself and therefore it is not in the record on appeal, we are unaware of its exact contents. What we know about the list is based on Officer Barragan's description of it.[4] And based on that description, we know that the list did not contain an invoice of actual repair costs. We also know that the list is not an estimate of the actual cost to repair the damage that Kyle caused. Rather, the list apparently sets forth a generic, one-size-fits-all removal cost of $400 for every incident of graffiti on City-owned property. From what Officer Barragan said, this

---

[4] Kyle objected on hearsay and foundation grounds to Officer Barragan's testimony about the list at the adjudication hearing. The trial court overruled the objection. Because Kyle does not contest the trial court's evidentiary ruling on appeal, we do not address it.

10

mechanistic flat rate seems to control the City's damages calculation in all cases, regardless of the particulars of a given incident, such as the graffiti's dimensions,[5] the type of material used in creating the graffiti, the nature of the surface on which the graffiti was written, and the method and manpower employed for cleaning up the graffiti. In short, the list reflects a generalized, non-case-specific damages estimate, not an estimate tethered to the facts of Kyle's vandalism.

This deficiency of the graffiti cost removal list is underscored by Officer Barragan's acknowledgement that he knew neither the length of time it would take to repair the damages that Kyle caused nor the number of people necessary to make the repairs, as well as his acknowledgment that he did not know the cost of the materials to repair that damage. The list's flat rate of $400 per incident thus bears, at best, an attenuated correlation to the cost of removing the graffiti for which Kyle was responsible.

To make matters worse, Officer Barragan was unable to explain how the list was prepared and hence how its flat rate of $400 per incident was even derived in the first place. This has left us wondering whether or not it was just a coincidence that the list's damages calculation hit Penal Code section 594's felony vandalism mark of $400 right on the nose.

---

[5] Initially, Officer Barragan testified that the list states it costs $400 to remove graffiti having the dimensions (two feet by three feet) of the graffiti on the wall at 2231 South Barrington Avenue. Subsequently, however, Officer Barragan indicated that it also would cost $400 to remove the graffiti on the wall at 2250 South Barrington Avenue, the dimensions of which were never specified in the record.

11

The People argue that Officer Barragan's damages estimate was not based solely on the graffiti cost removal list, but also on his review of the photographs of the graffiti on the two City-owned properties and his observations of the graffiti during his visit to those sites. Yes, Officer Barragan did review the photographs, and he did visit the sites. However, neither the photographs nor any notes summarizing his site visit were introduced into evidence. And more fundamentally, Officer Barragan testified unequivocally that his damage estimate was based exclusively on the graffiti cost removal list.

The People's contention that the juvenile court could determine the amount of damage based on the testimony of Officers Chavez and Roh, not just Officer Barragan's, is incorrect. Officers Chavez and Roh both testified only about their observations of the tagging. Neither testified regarding the extent of the damage the tagging caused.

Because Officer Barragan was the only prosecution witness who testified regarding damages, and his damage calculation was predicated on the graffiti cost removal list, the juvenile court's felony vandalism finding necessarily rested on the list. And because the list's damages calculation was not tied to the specific facts of this case, the court's finding fails to satisfy even the relaxed scrutiny of sufficiency of the evidence review. The list is an insufficient basis for the juvenile court's finding that Kyle caused $400 or more in damages to the City-owned properties and the resulting imposition of felony punishment on Kyle.[6]

---

[6] At the adjudication hearing, the prosecution suggested that the stipulated $100 worth of damage to Hai's Liquor could be aggregated with the damage to the City-owned properties for purposes of calculating whether the felony vandalism level of

Reported decisions on the "actual cost" method for determining restitution awards arising from vandalism support our conclusion. Under this method, the amount of the award "must have some factual nexus to the damage caused by the [juvenile's] conduct." (*Luis M.*, *supra*, 59 Cal.4th at p. 309; see also *id*. at p. 307; Welf. & Inst. Code, § 730.6.)

In *Luis M.*, the government entity seeking restitution failed to satisfy that standard because it "had no information about the actual abatement costs related to [the juvenile's] conduct." (*Luis M.*, *supra*, 59 Cal.4th at p. 304.) In particular, the entity introduced no photographs of the juvenile's graffiti. (*Id*. at pp. 303-304.) And it provided "no evidence about the materials, equipment, and labor required to remove it." (*Id*. at p. 309.) Under those circumstances, the restitution award was reversed. *Luis M.* highlights the problems with the People's felony vandalism case against Kyle. Just as in *Luis M.*, no photographs of Kyle's graffiti were introduced into evidence, and no evidence was offered regarding the cost of labor and materials to remove Kyle's graffiti.

---

$400 or more in damage was reached. As a general proposition, acts of vandalism that cause less than $400 in damage may be aggregated to form the predicate for a felony vandalism charge. (See *In re Arthur V.* (2008) 166 Cal.App.4th 61, 68.) Here, however, the damage to Hai's Liquor was not alleged in petition's felony vandalism count—it was alleged in the misdemeanor vandalism count only. The incorporation of the misdemeanor vandalism damage to Hai's Liquor in tallying felony vandalism damages thus would have been impermissible. (*In re Robert G.* (1982) 31 Cal.3d 437, 445.) The People do not advocate for such aggregation on appeal.

*People v. Santori* (2015) 243 Cal.App.4th 122 is in sharp contrast to *Luis M.* and our case. In *Santori*, the restitution award was based on an estimate of the amount of damage actually caused by the defendant's graffiti, including manpower necessary to remove the graffiti, not an average based on other incidents of graffiti. (*Santori*, at pp. 126-127.) Under those circumstances, the award was upheld.

In *People v. Aguilar* (2016) 4 Cal.App.5th 857, 860, the City of Los Angeles derived its claimed amount of restitution from "'a graffiti removal cost sheet which lists different surfaces and the cost of graffiti removal from those particular surfaces.'" Whether this is the same list on which Officer Barragan predicated his damages calculation in this case is unclear. In *Aguilar*, however, the City's damages witness did not tie his damages calculation to a per-incident rate generated by the list. Instead, in making his calculation, the witness considered photographs depicting the graffiti at issue in the case, the "size and extent of the graffiti," the need "for an expedited removal" (it was on a children's day care center) and "the costs of both paint and manpower." (*Id.* at p. 865.) *Aguilar* reflects a case-specific damages determination and thus is quite different from the generalized damages determination on which the juvenile court's felony vandalism finding here rests.

2. *The Graffiti Cost Removal List Fails to Satisfy the Criteria for Use of Average Costs in Restitution Cases*

The average cost method for determining restitution awards appears to bear some resemblance to the per-incident damages calculation of the graffiti cost removal list on which the juvenile court's felony vandalism finding in this case rests. As

the People acknowledge, however, Welfare and Institutions Code section 742.14 does not authorize use of the average cost method beyond the restitution context. In any event, we question whether this method could be applied constitutionally to the adjudication of vandalism allegations against a juvenile in a Welfare and Institutions Code section 602 petition. Our doubts flow from the distinction between a restitution proceeding and an adjudication proceeding. A juvenile who comes out on the wrong end of a restitution proceeding is not deprived of his or her liberty. The juvenile is simply ordered to pay money, as would be the case following a civil judgment. The standard of proof in a restitution proceeding requires an entity seeking restitution for acts of vandalism to make only a prima facie showing of the amount of damage; the burden then shifts to the defendant to demonstrate that the amount of damage is less than that amount. (*People v. Santori*, *supra*, 243 Cal.App.4th at p. 126.)

By contrast, a juvenile who comes out on the wrong end of the adjudication of a Welfare and Institutions Code section 602 petition alleging vandalism may be deprived of his or her liberty. Accordingly, the standard of proof is the same as in an adult criminal case: the prosecutor must prove beyond a reasonable doubt that the juvenile committed acts of vandalism, and, if felony vandalism is alleged, that the damage the juvenile caused is $400 or more. (*In re Winship* (1970) 397 U.S. 358, 364 [90 S.Ct. 1068, 25 L.Ed.2d 368]; CALCRIM No. 2901.)

It is one thing to use the average cost method used to determine the amount of restitution for juvenile vandalism. It is quite another thing to use that method to determine whether a juvenile's vandalism is subject to punishment as a felony. The imposition of that degree of punishment should be based on the

15

damage the juvenile actually caused, not on the average damage that other juveniles cause.  The graffiti cost removal list bases the imposition of felony penalties on a per-incident average.  We need not decide if this mode of determining punishment would be constitutional.  For even if the average cost method of Welfare and Institutions Code section 742.14 applies outside the restitution setting, the graffiti cost removal list does not satisfy the statutory criteria.  Among other requirements, average cost determinations for calculating restitution awards must be reviewed every three years by government entities using that method.  (Welf. & Inst. Code, § 742.14; *Luis M.*, *supra*, 59 Cal.4th at p. 308.)  There is no evidence that the graffiti cost removal list was subject to such a review.

## DISPOSITION

The adjudication order is reversed in part. The juvenile court is instructed to reduce the felony vandalism count to a misdemeanor vandalism count. The adjudication order is affirmed in all other respects. The disposition order is reversed. We remand for a new disposition consistent with the reduction of the felony count to a misdemeanor.

SMALL, J.[*]

We concur:

ZELON, Acting P. J.

SEGAL, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.