Filed 11/30/21  P. v. Lewis CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> WESLEY JAMES LEWIS, <br><br> Defendant and Appellant. | D079047 <br><br><br> (Super. Ct. No. 19CR02054) |

APPEAL from a judgment of the Superior Court of Santa Cruz County, John Steven Salazar, Judge.  Affirmed.

Nicholas Seymour, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans, and Jessica C. Leal, Deputy Attorneys General, for Plaintiff and Respondent.

Wesley James Lewis was released from Santa Cruz County Jail around 11:15 p.m., miles from his home, after a misdemeanor arrest for public

intoxication. During his walk back toward his home, he attempted to break the front door window of one business and successfully shattered the glass of a different business, after which he entered the building, drank some water, and removed a jacket. He admitted his actions at trial and requested a necessity jury instruction (CALCRIM No. 3403), which the court refused. The jury found him guilty of one count of second degree commercial burglary (Pen. Code,[1] § 459), one count of attempted burglary (§§ 664 and 459), and two counts of felony vandalism (§ 594). It also found true special allegations that each act of vandalism was $400 or more.

He appeals, contending the court erred by denying the request for the necessity jury instruction, which he maintains was a prejudicial error. He also contends the jury's finding that the damage he caused during the break-in at one of the businesses equaled or exceeded $400 is not supported by substantial evidence and should be reduced to a misdemeanor. We conclude the trial court properly refused the requested instruction, and substantial evidence supports the jury's true finding. Accordingly, we will affirm the judgment.

BACKGROUND AND PROCEDURAL FACTS

In October 2018, Lewis was living in a tent in Aptos, California behind the astrology lab at Cabrillo College. On October 21, Lewis drank about half a gallon of gin. He had substantial issues with alcohol, and he drank more than usual.

He took a bus from Aptos to Santa Cruz. Santa Cruz Police Officer Wesley Hansen noticed him when responding to a call about a different person. Lewis was staggering, moving at a slow pace, and using a building to

---

[1] Further section references are to the Penal Code unless otherwise specified.

support himself.  Lewis could not walk in a straight line, smelled of alcohol, and had been involved in a confrontation with someone else at a nearby business.  Officer Hansen arrested Lewis just after 5:00 p.m. for public intoxication (§ 647, subd. (f)), which is a misdemeanor charge used when a person is too drunk to take care of himself or herself.

Lewis was booked into Santa Cruz County Jail.  Personnel first observed Lewis at 5:29 p.m., noting he was unsteady on his feet and had slurred speech.  The facility offered him water.

The County Jail released Lewis at 11:15 p.m. the same night, after the nurse cleared him.  Deputies returned his property:  a cellphone with a cracked screen, a red hat, a cell phone charger, blue pants, a red shirt, and black shoes.

Around 12:07 a.m., Lewis approached Ayurvedic Healing.  Near the entrance is a large, covered patio, with a water fountain or spigot near the front door.  Lewis threw a rock at the front door several times and kicked it.  The front door had tempered glass, and the glass shattered in place, but it did not fall out of the door frame.  It cost $861 to retouch and paint the door frame and to replace the glass.

At about 12:18 a.m., Lewis approached Bay Plumbing, which is across the street from Ayurvedic Healing.  Lewis threw a rock at the left panel of the double door, breaking the glass so that a person could walk through the closed door.  A vanity with a glass door inside the entryway also broke.  Lewis was inside the business for about a minute, during which time he drank some water and took a jacket.

Later that morning, the building manager secured the space by patching the door with plywood.  He billed $250 for the time and materials to secure the door.  New glass needed to match the glass on the other panel, fit

3

the door correctly, and have the same strength as the previous, tempered glass. Later, tempered glass was fitted, and the glazing company charged $277. The total cost to secure the door and replace the glass was $527. The vanity company replaced the door to the vanity at no charge to Bay Plumbing.[2]

At trial, the prosecution presented evidence of prior breaking and entering cases (See Evid. Code, § 1101, subd. (a)), to which Lewis admitted he had pleaded no contest.

Lewis testified in his own defense. He said he did not remember being arrested or taken to the sobering center (the county jail), and he did not remember his release. He was still drunk when he was released.

He did not call a taxi because he did not have any money, and his cell phone was not working. He did not take a bus because it was late at night, and he did not think the buses were still running. He did not go to a homeless shelter because he knew they closed at night and he would have had to check in around 5:00 p.m.

He wanted to get back to his camp, which he estimated was a couple of hours away on foot It was really cold,[3] and his arms were exposed. He found a shirt on his walk, and he put it on to layer. He also tried to warm up by jogging a little bit. But he felt like his legs were becoming immobilized and he would not be able to move as fast. He wanted to find someplace to warm up his legs so they would not lock up, like they had in the past. When that

---

[2] The record does not indicate the cost of this repair to the vanity company.

[3] The parties stipulated that on October 22, 2018 from midnight to midnight the following day, the range of temperatures in the city limits of Santa Cruz was between 49 and 70 degrees.

happens, he has to pause until his legs uncramp, and because the wind was cold, he wanted to warm up to "come back into being."

He did not specifically remember walking up to Ayurvedic Healing, but he thought it looked like a place where people might hide a blanket or sleeping bag, and he saw the water spigot, from which he drank. He did not think the patio was an option because there was no wind break, and the concrete was too cold. He smashed and kicked the door of the business; he intended to break the glass completely so he could enter. He told the jury he was looking for a warm place to sleep.

After he was unable to enter Ayurvedic Healing, he realized the second layer T-shirt he had found was wet, so he took it off, believing it made things worse in the cold weather. Then he walked across the street to Bay Plumbing. He went there because he was looking for a place to get warm since he felt cold and believed there was no other option but to break into the business to find warmth. He thought there might have been a couch inside. Lewis took a jacket from Bay Plumbing.

Lewis acknowledged that there were other businesses in the area, including a Safeway and a Grocery Outlet. He believed if he loitered in one of those spots, he would have been arrested. He also knew there was a 24-hour Jack-in-the-Box, but he could not remember if he had entered the establishment that night. He said if he showed up to Jack-in-the-Box without money, they would ban him from the establishment. Similarly, he did not go into O'Ferrell's Donuts, a 24-hour business, because he thought he would get arrested if he tried to sit there without paying for anything.

After he took the jacket from Bay Plumbing, he continued toward Aptos, and he found a box of free items in Soquel Village. He took a thick comforter and some bedding materials. He used these items to help create a

5

wind break beside a business, and he slept on the sand, in a dry creek bed. The next day after it warmed up, he continued to his home, where he stayed until he checked into a sober living environment the following week.

Lewis was charged with one count of second degree commercial burglary (§ 459; count 1); one count of attempted burglary (§§ 664 and 459; count 3); and two counts of felony vandalism (§ 594, subd. (a); counts 2 and 4). It was further alleged he had a prior felony conviction in California (§ 667.5, subd. (b)) and a prior conviction of a serious or violent felony or juvenile adjudication in Virginia (§§ 667, subd. (b)-(i)).

The defense requested a necessity instruction, CALCRIM No. 3403. The court refused the request, telling the parties: "Necessity is when you're backpacking in a snowstorm and you break into a cabin so you don't die. I don't find it to be in this fact pattern necessity. He had dozens of options finding a police officer or going into a business. If you're thinking you're going to die or face serious health issues a whole different matter."

The court pointed out Lewis's defense appeared to be that he did not intend to steal, but he could have walked back to the jail or gone to other businesses that appeared open.

Defense counsel explained: "The emergency from his perspective is being a person who is on the spectrum of gone from being very very drunk to now very drunk released without any kind of resources in the city. The idea is that there wasn't a legal alternative."

The court told defense counsel Lewis could have gone to the donut shop and said he was freezing and needed help: "The police would come out and say what's the situation. I'm freezing I need a jacket. They would deal with that emergency. If they say, we're going to arrest you for trespassing, they have to say we're warning you to leave and you leave and you don't get

6

arrested for trespassing." Defense counsel responded that while she hoped that is what would occur, in this case, it was the same people who arrested him and released him already.

The court also pointed out that a reasonable person would have had to have believed that the act was necessary under the circumstances, and "[t]here's no reasonable person who would find that shattering a business window is a reasonable course of action . . . ."

The jury found Lewis guilty on all counts  It also found true the special allegations that the damage caused by the vandalism in counts 2 and 4 were each $400 or more.

The court sentenced Lewis to the upper term of three years on count 1, the middle term of eight months on count 4 to be served consecutively.  It sentenced him to the middle term of one year on count 3, concurrent, and it stayed the sentence on count 2 under section 654.  The court imposed a $300 restitution fine (Pen. Code, § 1202.4, subd. (b)), a $160 court operations assessment (Pen Code, § 1465.8), and a $120 conviction assessment (Gov. Code, § 70373).

Lewis timely appealed.

DISCUSSION

A.  Necessity Instruction

We review assertions of instructional error de novo.  (*People v. Manriquez* (2005) 37 Cal.4th 547, 581, 584.)  "[I]nstructions not supported by substantial evidence should not be given." (*People v. Ross* (2007) 155 Cal.App.4th 1033, 1050.)  If an instruction has no application to the facts of the case, it would be error to offer it.  (*People v. Guiton* (1993) 4 Cal.4th 1116, 1129.)  In this context, " '[s]ubstantial evidence is "evidence sufficient 'to deserve consideration by the jury,' not 'whenever *any* evidence is presented,

7

no matter how weak.' " ' [Citations.]" (*People v. Wilson* (2005) 36 Cal.4th 309, 331.) Thus, we consider whether there was substantial evidence that Lewis acted out of necessity in this situation.

A necessity defense is available when a defendant violates the law " '(1) to prevent a significant evil, (2) with no adequate alternative, (3) without creating a greater danger than the one avoided, (4) with a good faith belief in the necessity, (5) with such a belief being objectively reasonable, and (6) under circumstances in which he did not substantially contribute to the emergency.' " (*People v. Miceli* (2002) 104 Cal.App.4th 256, 267, quoting *People v. Pepper* (1996) 41 Cal.App.4th 1029, 1035; CALCRIM No. 3403.) To justify a necessity defense instruction, Lewis must have proffered substantial evidence of each of these six elements.

Although the parties dispute the emergence of necessity at all, with the People arguing there was no imminent danger or harm and Lewis maintaining that he felt his legs were becoming immobilized so that he would not be able to continue to move because they would lock up or cramp, we do not need to wade into this debate because Lewis fails to provide sufficient evidence of several other elements of the defense.

First, Lewis had a number of adequate legal alternatives available to him. The necessity defense only excuses criminal conduct that is " 'justified by a need to avoid an imminent peril' " when there is " ' no time to resort to the legal authorities or such resort would be futile.' [Citation.]" (*People v. Verlinde* (2002) 100 Cal.App.4th 1146, 1164 (*Verlinde*).) He identified and dismissed several options, like taking a bus or taxi or going to a homeless shelter, because he lacked money, or the timing did not allow for it. But there were additional, reasonable alternatives available as well. The trial court explained he could have asked to remain at the county jail until the

8

morning. He could have entered the nearby Safeway or Grocery Outlet, grocery stores with aisles he could have walked. He could have gone into Jack-in-the-Box or O'Ferrell's Donut Shop to warm up; both were open 24 hours, and he was aware that both were options.

Lewis testified that he thought if he loitered or attempted to enter, the employees would contact police and he would have been arrested or banned from the establishment. Even accepting Lewis's fears of additional police contact as truthful, he could have entered those businesses and asked them to contact the police for help. He supplied no evidence that he could not have done so in time to prevent cramping or that doing so would have been futile. (See *Verlinde*, *supra*, 100 Cal.App.4th at p. 1164.)

Second, there is not sufficient evidence that his belief in the need to break into closed businesses was objectively reasonable. Lewis argues that there is no evidence that any business would have actually helped him if he had asked. But that is not the question we ask. We ask if a reasonable person would believe that there were no legal alternatives, that breaking into a store was the only way he could warm up enough to prevent his legs from cramping. As we have already explained, given the number of legal alternatives available here, a reasonable person concerned about the outdoor temperature would not have opted to vandalize property to get inside a building when there were open businesses nearby.

Third, Lewis also fails to demonstrate that he did not contribute to the alleged necessity. (See *Verlinde*, *supra*, 100 Cal.App.4th at p. 1165 [necessity defense not available "when it is the culpable conduct of the actor that creates or contributes to the atmosphere of necessity"].) He contends the jail is the only culpable party because it released him far from home, with no transportation option, late at night. This argument assumes deputies knew

9

that Lewis did not have a place to stay nearby and that he did not know someone who could have given him a ride. And while there was some controversy about the operability of his cell phone because its screen was cracked, none of the attorneys asked Lewis if the phone was functional when charged. Lewis was released with the phone and the charger, evidence that he had a means of communicating with some source to get a ride if he wanted one. This suggests the jail did not contribute to the alleged atmosphere of necessity. Because there is insufficient evidence to support Lewis's necessity claim, it was not error to refuse that instruction.[4]

### B. Felony Vandalism at Bay Plumbing

Lewis also argues that the amount of damage at Bay Plumbing did not exceed $400 and therefore did not qualify for a felony charge. We are not persuaded by his claim that Bay Plumbing's actions of securing the door while it waited for the glass, then replacing the broken glass constituted repairing the door twice.

Section 594, subdivision (b)(1) states that "[i]f the amount of defacement, damage, or destruction is four hundred dollars ($400) or more," it is a felony crime, but it does not dictate how to value the defacement, damage, or destruction. Courts have found the cost of repair to be a reasonable basis for determining the value of damages. (*In re Kyle T.* (2017) 9 Cal.App.5th 707, 713-714 [most obvious way to introduce felony vandalism is to provide invoice with actual cost of repairs or even estimate of cost of repair].)

On appeal, the defendant bears the burden of proving there was insufficient evidence for a jury to convict him. (*People v. Sanchez* (2003) 113

---

[4]    We decline to address Lewis's contention that there was a prejudicial error because there was no instructional error at all.

Cal.App.4th 325, 330.)  We review the record in the light most favorable to the judgment to assess whether substantial evidence supports the jury's finding.  (*People v. Covarubbias* (2016) 1 Cal.5th 838, 890 (*Covarubbias*).)  In this context, substantial evidence is evidence that is "reasonable, credible and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Koontz* (2002) 27 Cal.4th 1041, 1078.)

The jury found true the special allegation that the damage caused by the vandalism was $400 or more.  Thus, if the evidence reasonably justifies the jury's factual finding, even if an alternative finding would be reasonable, we affirm the judgment.  (*Covarubbias*, *supra*, 1 Cal.5th at p. 890; *People v. Rodriguez* (1999) 20 Cal.4th 1, 11.)

When Bay Plumbing employees arrived to open for business on October 22, 2018, the left panel of the double door was completely shattered, leaving a gaping hole in the front entry.  The building manager secured the space by patching the door with plywood.  Lewis does not dispute the monetary value of this activity, which was calculated to be $250 for time and materials.  The placement of plywood over a gap where a window once appeared did not constitute a "repair" because it did not actually replace the glass or return the door to its pre-vandalism condition.  It simply secured the business so that additional theft would not occur throughout the day or days prior to the glass being replaced.  Otherwise, a person could walk through the door even when it was shut.  Replacement glass needed to match the un-broken door panel, both in strength and style, and it had to be fitted to the door.  This is not the same as securing the space with plywood.  The tempered glass was fitted later, at an additional cost of $277, bringing the total to

11

repair the door to $527, above the $400 minimum required.[5] Because securing the building was part of the sequence of activities to repair the door, there was substantial evidence from which the jury could conclude the cost of the repair exceeded $400.

## DISPOSITION

The judgment is affirmed.

HUFFMAN, Acting P. J.

WE CONCUR:

AARON, J.

DATO, J.

---

[5] We note that although Bay Plumbing did not pay to replace the door to the vanity Lewis broke when he threw the rock into the business, the vanity door also had to be replaced at a cost to the vanity company. Because the record does not indicate what that cost was, we do not consider its value to conclude substantial evidence supports this factual finding.