Filed 3/22/23  P. v. Aguirre CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RICARDO AGUIRRE,<br><br>    Defendant and Appellant. | E077587<br><br>(Super.Ct.Nos. INF2000441 &<br>(INF1900624 & INF2001334)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Dale R. Wells, Judge.

Affirmed with directions.

William G. Holzer, under appointment by the Court of Appeal, for Defendant

and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney

General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal and

Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury found defendant and appellant Ricardo Aguirre guilty of felony vandalism (Pen. Code, § 594, subd. (b)(1))[1], in Riverside County Superior Court case No. INF2001334.  In that case, the trial court impliedly found true the allegation that defendant suffered a prior strike conviction.  (§§ 667, subds. (c) & (e)(1) & 1170.12, subd. (c)(1).)  The trial court sentenced defendant to prison for a term of four years.

Due to the foregoing vandalism conviction, the trial court found defendant violated his probation in Riverside County Superior Court case No. INF2000441 and sentenced defendant to a concurrent term of two years.  Also due to the vandalism conviction, the trial court found defendant violated his probation in Riverside County Superior Court case No. INF1900624 and sentenced defendant to a concurrent term of three years.

Defendant raises nine issues on appeal.  First, defendant contends substantial evidence does not support the finding that he caused $400 or more of damage.  (§ 594, subd. (b)(1).)  Second, defendant asserts the $400 threshold elevating vandalism to a wobbler offense (§ 594, subd. (b)(1)) violates equal protection because vandals do not have the same $950 wobbler threshold as thieves (§§ 486, 487, subd. (a), 488, 489, subd. (c)(1)).  Third, defendant contends the trial court erred by not instructing the jury that, in order to aggregate the amount of damage caused by separate acts of vandalism, the jury must first find that the separate acts were part of a single intention and plan.

_____

[1] All further statutory references are to the Penal Code unless otherwise indicated

2

Fourth, defendant asserts the trial court erred by allowing propensity evidence to be presented to the jury. Fifth, defendant contends the trial court erred by not sua sponte giving the jury a limiting instruction concerning propensity evidence (CALCRIM No. 375). Sixth, defendant asserts the trial court erred by not excluding hearsay. Seventh, defendant contends the trial court erred by not making an express finding on the prior strike conviction allegation. Eighth, defendant asserts that when the foregoing alleged errors are cumulated they amount to a denial of due process. Ninth, defendant contends the abstracts of judgment in the probation violation cases need to be amended. We affirm with directions.

## FACTUAL AND PROCEDURAL HISTORY

Defendant is a neighbor of the victim's sister (Sister). On August 20, 2020, at approximately 10:30 a.m., the victim, who is an adult male, was babysitting at Sister's house (the House). The front door of the House was closed and locked. Defendant broke a front window of the House. Defendant then kicked the front door of the House approximately five times. When the door swung open, defendant "yell[ed] random profanity, [he] didn't make sense." As the victim moved toward the front door, defendant backed away toward the middle of the front yard. The victim told defendant "to get out of the yard" and called 911. Defendant returned to his home.

The front door and front window of the House were "in good working order" prior to defendant's actions. Additionally, the front door did not have scratches on it. Defendant's actions caused the door to be "hard to close." Defendant's father (Father) offered to have the window and door repaired or replaced.

3

Father spoke to one repair person to determine if the door could be repaired, rather than replaced, but it was "damaged beyond repair." Father had the damaged door replaced with a new door from Home Depot. Father only went to Home Depot to shop for doors and explained that "[a]ll doors are very expensive right now," i.e., during the pandemic. The new door cost $270.79. Father delivered the door himself, in his truck. Father spent $90 on labor for a person to replace the door.

The window was repaired by the Coachella Valley Glass Company. According to Sister, after the repair, the window looked the same as it did before it was broken, i.e, it was not in better condition after being repaired. The window repair cost $162.[2] In total, Father spent $522.79 to remedy the damage caused by defendant.

**DISCUSSION**

A.    <u>AMOUNT OF DAMAGE</u>

Defendant contends there is not substantial evidence he caused $400 or more of damage. We examine "whether, after viewing the evidence in the light most favorable to the prosecution, any reasonable fact finder could have found the [damage] element[] of the crime to be true beyond a reasonable doubt." (*In re Kyle T.* (2017) 9 Cal.App.5th 707, 712.) "It is not the province of the reviewing court to overturn the jury's verdict when it is supported by substantial evidence including the reasonable inferences to be drawn therefrom." (*People v. Cullen* (1951) 37 Cal.2d 614, 625.)

---

[2] The reporter's transcript erroneously reflects that Father spent $10,062 on repairing the window.

If a vandal causes less than $400 in damage to property, then the offense is a misdemeanor. (§ 594, subd. (b)(2)(A).) If a vandal causes $400 or more in damage to property, then the vandalism offense is elevated to a wobbler. (§ 594, subd. (b)(1).) The vandalism statute "does not itself specify a method for proving the amount of property damage in a vandalism prosecution." (*In re Kyle T., supra,* 9 Cal.App.5th at p. 713.) However, section 594 "requires the People to prove the amount of 'defacement, damage, or destruction,' which [has been] interpret[ed] to include the cost of repairing or replacing the vandalized property." (*In re A.W.* (2019) 39 Cal.App.5th 941, 950.) When calculating restitution, the value of "damaged property shall be the replacement cost of like property, or the actual cost of repairing the property when repair is possible." (§ 1202.4, subd. (f)(3)(A).)

Defendant's issue is with the "like property" factor. Defendant asserts the prosecutor failed to prove that the replacement door was "like property." The record reflects that the primary difference between the damaged door and the replacement door was that the replacement door was new. During trial, Sister was asked, "Was the new door better than the previous door prior to that door being broken?" Sister responded, "Well, yeah, because it was a new door." A reasonable inference from Sister's answer is that the damaged door and the replacement door were similar, other than the replacement door being new.

Further, Father testified that "[a]ll doors are very expensive right now." A reasonable inference from that testimony is that Father was seeking to purchase the cheapest door possible. Thus, one can reasonably infer that Father did not upgrade

5

Sister's door.  In sum, there is support for the finding that the replacement door was "like property."

B.  EQUAL PROTECTION

As set forth *ante*, if a defendant's vandalism causes $400 or more in damage, then the vandalism is a wobbler.  (§ 594, subd. (b)(1).)  If a thief takes property worth $950 or more, then the theft is a wobbler.  (§§ 489, subd. (c)(1).)  Defendant contends the $400 threshold for vandalism to be a wobbler offense (§ 594, subd. (b)(1)) violates equal protection because vandals should have the same $950 wobbler threshold as thieves (§§ 486, 487, subd. (a) & 488).[3]

"The first step in the equal protection analysis is to determine whether two groups are similarly situated.  The question ' "is not whether persons are similarly situated for all purposes, but 'whether they are similarly situated for purposes of the law challenged.' " ' "  (*In re Williams* (2020) 57 Cal.App.5th 427, 434.)  " 'Persons convicted of *different* crimes are not similarly situated for equal protection purposes.' "  (*People v. Descano* (2016) 245 Cal.App.4th 175, 182.)

Theft and vandalism are different offenses.  Theft involves the taking of property (§ 487, subd. (c)), while vandalism involves the destruction or defacement of property (§ 594, subd. (a)).  With theft, it is possible the property could be returned unharmed.  While with vandalism, the property necessarily has to be replaced, repaired, or restored.

---

[3] The People assert defendant forfeited this issue by failing to raise it in the trial court.  We choose to address the merits of the issue because it is easily resolved.

Because the crimes are different, defendant has not demonstrated that vandals who cause $400 or more in damage are similarly situated to thieves.

### C.     AGGREGATION INSTRUCTION

Defendant contends the trial court erred by not instructing the jury that, in order to aggregate the amount of damage caused by separate acts of vandalism, the jury must first find that the separate acts were part of a single intention and plan.[4]

"[M]ultiple instances of misdemeanor vandalism can be aggregated to form a single felony, unless 'the evidence shows that the offenses are separate and distinct and were not committed pursuant to one intention, one general impulse, and one plan.' " (*In re Arthur V.* (2008) 166 Cal.App.4th 61, 69.)  In other words, in order to reach the $400 threshold for a felony, a prosecutor can aggregate the damage from multiple acts of vandalism if the acts were part of a single intention and plan.

In this case, the prosecutor aggregated the damage from the broken window and door to reach the $400 threshold.  The trial court instructed the jury with the standard vandalism instructions, which do not include the foregoing information about aggregating the damage only if the offenses were part of a single intention and plan. (CALCRIM Nos. 2900 & 2901.)  Thus, the trial court did not instruct the jury that the jury needed to find the two acts of vandalism were part of a single intention and plan

---

[4] The People assert defendant forfeited this issue by failing to request the instruction in the trial court.  We choose to explain why, if there were an error, it was harmless.

before the damage from the two acts could be aggregated.  For the sake of efficiency, we will assume, without deciding, that the instructional omission was an error.

"We must determine whether it is clear beyond a reasonable doubt that a rational jury would have rendered the same verdict absent the error." (*People v. Merritt* (2017) 2 Cal.5th 819, 831.)  The window and door that defendant broke are separated by approximately five feet.  Defendant broke the window, and then approximately two minutes later, kicked in the door.  Given the physical and temporal proximity of the two acts, the reasonable inference is that the two acts were part of a single intention and plan.

Moreover, during closing argument, defendant's trial attorney asserted (1) it was unclear if defendant was the person who committed the offenses; and (2) the value of the door and window was questionable because Father "didn't shop around" to find if there were cheaper options.  Defense counsel did not assert that the two acts were part of separate intentions and plans and therefore could not be aggregated.

Given the proximity of the window and the door, the brief time between events, the lack of any intervening provocation, and the absence of argument on the issue by defense counsel, we conclude that a reasonable jury would have rendered the same verdict absent the error.  Thus, the assumed error is harmless.

D.     ADMISSIBILITY OF PROPENSITY EVIDENCE

1.     *PROCEDURAL HISTORY*

The prosecutor moved to present evidence that, in 2019, defendant assaulted Sister with a lawn chair and, in 2020, defendant kicked in Sister's front door,

8

brandished a knife, and threatened Sister. The prosecutor asserted the evidence should be allowed because "vandalism is a specific intent crime." Defendant opposed the motion asserting "[v]andalism is a general intent crime." Further, defendant contended his theory of the case was "that he didn't do it or the value didn't exceed [$400], but not that he did it and it was an accident. So it's not like . . . they need to prove . . . he was motivated by criminal intent to do this." The trial court ruled that it would "exclude the information pertaining to the previous conduct" because there was too great a risk of the jury using the evidence as propensity evidence. However, the ruling was without prejudice, if anything should change during the trial.

The trial court and the parties had an off-the-record discussion about jury instructions. Five days later, the parties again convened on the record, and the trial court said, "What I was going to allow is there has been previous aggressive conduct by the defendant toward the parties in this case, but not any[thing] specific about what that conduct was." We infer that, during the off-the-record discussion of jury instructions, the trial court altered its prior ruling.

Defendant moved to exclude a portion of the victim's 911 call pertaining to the instant case, because during the call, the victim alleged defendant had previously attacked Sister and the victim's brother, i.e., the attacks in 2019 and 2020. The trial court denied the motion to exclude because the evidence fell within the court's ruling of allowing evidence of "aggressive behavior . . . without getting into specifics."

The jury heard the victim's 911 call, in which he said, "[W]e have [a] restraining order on, um, on the neighbor"; and "He—he's upset. I guess he's attacked my sister

9

and my brother before."  The Dispatcher asked, "And so you said he's attacked your—your family before?"  The victim responded, "Yes."

When Sister testified, the following exchange occurred:

"[Prosecutor]:  So you stated that you've had prior incidents regarding the defendant; is that right?

"[Sister]:  Yes.

"[Prosecutor]:  How many incidents have you had?

"[Sister]:  Maybe a total of six incidents.

"[Prosecutor]:  Okay.  And without getting into the specifics, what type of incidents have you had?

"[Sister]:  Um, some violent incidents where he actually, like you know—

"[Prosecutor]:  Okay.  And is he allowed to be at your house?

"[Sister]:  No.

"[Prosecutor]:  Why is that?

"[Sister]:  Um, I actually have a restraining order against him."

When Father testified, the prosecutor asked, "And so are you familiar that there had been previous incidents where your son has been aggressive with the neighbors?"  Father replied, "Yes.  That has happened.  But every time something has happened, he is the one that comes out injured."  Riverside County Sheriff's Deputy Franco testified that, when he was dispatched to the incident involving defendant, the call concerned "a violation of a restraining order."

10

2.    *ANALYSIS*

Defendant contends the trial court erred by allowing propensity evidence to be presented to the jury.  Defendant takes issue with the portions of the 911 call and the trial testimony set forth *ante*.[5]

We apply the abuse of discretion standard of review.  (*People v. Gonzalez* (2021) 12 Cal.5th 367, 407-408.)  "Evidence of a person's character . . . is inadmissible when offered to prove his or her conduct on a specified occasion."  (Evid. Code, § 1101, subd. (a).)  However, evidence of a person's prior misconduct is admissible "when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, . . . ) other than his or her disposition to commit such an act."  (Evid. Code, § 1101, subd. (b).)

Vandalism occurs when a person maliciously damages property.  (§ 594, subd, (a).)  The term "maliciously" in the vandalism statute indicates it is a general intent crime.  (*People v. Atkis* (2001) 25 Cal.4th 76, 85-86.)  The point of the malice element is to "ensure[] that the act is 'done with a design to do an intentional wrongful act . . . without any legal justification, excuse or claim of right.' "  (*Id.* at p. 88.)

The victim testified that after defendant broke open the door, defendant "yell[ed] random profanity, [he] didn't make sense," and defendant backed away toward the

---

[5] The People contend defendant forfeited the issue as to the trial testimony because defendant failed to object on the record.  We will give defendant the benefit of the doubt and assume that, during the off-the-record discussions, his trial counsel continued objecting to evidence of prior misconduct.  Thus, we will address the merits of the issue.

middle of the front yard. Defendant's conduct was so confusing that, without the context of prior misconduct, it could have appeared that defendant was seeking help for some sort of urgent problem, e.g., a fire or medical incident. In fact, the victim testified that the reason he called 911 was because his siblings warned him about defendant's prior misconduct. Thus, one needed to understand defendant's history in order to understand that defendant posed a threat, rather than defendant running to Sister's house seeking assistance from a threat. In sum, the evidence of defendant's prior misconduct was not offered to prove defendant had a tendency to commit the charged acts, rather, it was relevant to proving that defendant acted without justification—that he was not, for example, in danger and seeking help. The trial court did not err.

E.      FAILURE TO INSTRUCT

Defendant contends the trial court erred by not sua sponte giving the jury a limiting instruction concerning propensity evidence (CALCRIM No. 375).

"Evidence of past offenses may not improperly affect the jury's deliberations if . . . the evidence is obviously used to effect one or more of the many legitimate purposes for which it can be introduced. [Citations.] Neither precedent nor policy favors a rule that would saddle the trial court with the duty either to interrupt the testimony sua sponte to admonish the jury whenever a witness implicates the defendant in another offense, or to review the entire record at trial's end in search of such testimony. There may be an occasional extraordinary case in which unprotested evidence of past offenses is a dominant part of the evidence against the accused, and is both highly prejudicial and minimally relevant to any legitimate purpose. In such a setting, the evidence might be

12

so obviously important to the case that sua sponte instruction would be needed to protect the defendant from his counsel's inadvertence. But [our Supreme Court held] that . . . in general, the trial court is under no duty to instruct sua sponte on the limited admissibility of evidence of past criminal conduct." (*People v. Collie* (1981) 30 Cal.3d 43, 64, fn. omitted.)

As discussed *ante*, the evidence of defendant's prior misconduct was relevant to establishing that defendant acted maliciously, which was a legitimate purpose for the evidence. As a result, this is not an extraordinary case in which the trial court had a sua sponte duty to give the jury a limiting instruction on propensity evidence (CALCRIM No. 375).

### F.    HEARSAY

#### 1.    *PROCEDURAL HISTORY*

In the victim's 911 call, he said, "I guess he's attacked my sister and my brother before." When discussing the admissibility of the foregoing hearsay, the prosecutor said, "I don't know if he was present for the incident that took place." In other words, the victim was told about defendant attacking his siblings. The trial court replied, "It appears it says he attacked my sister, so it sounded like he wasn't personally aware of that. Although, my inclination would be to think that this has to do with kind of an excited utterance situation if he's calling 911 because of something that just happened."

#### 2.    *ANALYSIS*

Defendant contends the victim's statement to the 911 dispatcher about defendant having previously attacked the victim's siblings, should have been excluded as hearsay.

13

One of the requirements for the excited utterance/spontaneous statement exception is that the statement describes an act "perceived by the declarant." (Evid. Code, § 1240, subd. (a).) The victim's comment that he "guesses" defendant had attacked his siblings indicates that the victim did not witness the attack on his siblings. Therefore, for the sake of judicial efficiency, we will proceed on the assumption that the trial court erred by allowing the hearsay statement.

Next, we examine if the assumed error was harmless. Sister testified that she has a restraining order against defendant and previously had six violent encounters with defendant. Given that Sister testified to defendant's violent acts, the victim's repetition of that information was not prejudicial.

G.    FAILURE TO MAKE A FINDING ON THE PRIOR STRIKE
        ALLEGATION

   1.    *PROCEDURAL HISTORY*

After the jury returned its guilty verdict, the trial court proceeded to address the bifurcated issue of the alleged prior strike conviction. The following exchange took place:

The Court: "The allegation of the strike prior, do either counsel need to be heard on that or present evidence on that?

"[Prosecutor]: At this time the People would ask the Court take judicial notice of the plea forms. . . .

"The Court: Okay. Any objection to my taking judicial notice of the strike priors as alleged in the Information?

14

"[Defense Counsel]: No, Your Honor.

"The Court: Okay. Very well. The Court will take judicial notice of those[ a]nd consider those at the time of sentencing."

The minute order pertaining to the foregoing reads, "Court finds prior strike(s) true." Approximately one month later, at the sentencing hearing, the trial court said, "[T]he allegation of the strike prior was found true." When pronouncing defendant's sentence, the trial court said, "Because of the prior strike, his term has to be doubled."

2.     *ANALYSIS*

Defendant contends the trial court erred by doubling defendant's sentence when the trial court failed to find the prior strike allegation true.

In *People v. Clair*, our Supreme Court wrote, "On behalf of [the] defendant, the People raise the contention that the sentence on the serious-felony enhancement must be set aside because no finding on the underlying prior-conviction allegation appears. We disagree. During the penalty phase, [the] defendant waived trial by jury on the allegation and consented to trial by the court. At the same time, he stipulated that in deciding the issue, the court could consider the evidence that the People intended to introduce before the jury in order to prove the conviction as a circumstance in aggravation under the rubric of a prior felony conviction. Such evidence was in fact introduced, including what the court referred to as 'certified copies of [the] conviction.' The question was subsequently argued to the court. At sentencing, the court impliedly—but sufficiently—rendered a finding of true as to the allegation when it imposed an enhancement *expressly* for the underlying prior conviction. Contrary to

15

[the] defendant's claim, there is no failure of proof. Neither is there any reason to vacate the enhancement—and less reason still to disturb the penalty of death." (*People v. Clair* (1992) 2 Cal.4th 629, 691, fn. 17 (*Clair*).)

In *Clair*, the issue concerned a bifurcated enhancement and a court trial. (*Clair*, *supra*, 2 Cal.4th at p. 691, fn. 17.) Similarly, the issue in the instant case concerns a bifurcated prior strike allegation and court trial. The *Clair* defendant stipulated to the court considering the People's certified copies of the defendant's conviction, in order to prove the prior felony. (*Ibid.*) Likewise, in the instant case, the People requested the trial court take judicial notice of imaged plea forms. The trial court asked if defendant objected to the trial court "taking judicial notice of the strike priors as alleged in the Information." Defendant said he did not object. In *Clair*, the parties argued the enhancement allegation to the trial court. (*Ibid.*) In the instant case, the trial court asked if "either counsel need to be heard," and defense counsel said only that he did not object to the court taking judicial notice of the strike priors alleged in the Information.

In *Clair*, the Supreme Court held that the trial court impliedly "rendered a finding of true as to the allegation when it imposed an enhancement expressly for the underlying prior conviction." (*Clair*, *supra*, 2 Cal.4th at p. 691, fn. 17.) Correspondingly, in the instant case, at sentencing, the trial court said, "Because of the prior strike, his term has to be doubled. Count 1 is punishable by one year, four months[, t]wo years or three years, which has to be doubled. The Court has selected the mid term of two years double[d] for a total of four years incarceration." Thus, the trial court, similar to *Clair*, expressly imposed a sentence that implied it found the prior

strike allegation to be true. Given the similarities between the instant case and *Clair*, we follow the *Clair* precedent and conclude the true finding on the strike is implied. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455-456.)

H.     <u>CUMULATIVE ERROR</u>

Defendant contends that the errors he alleged, when cumulated, amount to a denial of due process. " 'The "litmus test" for cumulative error "is whether defendant received due process and a fair trial." ' " (*People v. Mireles* (2018) 21 Cal.App.5th 237, 249.)

For the sake of judicial efficiency, we assumed that the trial court erred by failing to instruct the jury on aggregating damage for separate acts of vandalism and admitting hearsay about defendant having previously attacked the victim's siblings. As explained *ante*, the instructional error was harmless because defendant did not argue the aggregation issue to the jury, and the hearsay was harmless because Sister testified that defendant was violent toward her in the past. Upon cumulating these two assumed errors, we conclude defendant received a fair trial, although it may not have been perfect. (*People v. Cunningham* (2001) 25 Cal.4th 926, 1009 ["The few errors that occurred during defendant's trial were harmless, whether considered individually or collectively. Defendant was entitled to a fair trial but not a perfect one"].)

I.     <u>ABSTRACT OF JUDGMENT</u>

Defendant asserts the abstracts of judgment in his probation violation cases (case Nos. INF2000441 & INF1900624) need to be amended to indicate the sentences in those cases are to be served concurrently to the sentence in the vandalism case (case No.

17

INF2001334). The People do not oppose the amendment of the abstracts. Accordingly, we will direct the trial court to amend the abstracts of judgment in the probation violation cases to indicate the sentences are concurrent to the vandalism sentence.

## DISPOSITION

The judgment is affirmed. The trial court is directed to amend the abstracts of judgment in case Nos. INF2000441 and INF1900624 to reflect those sentences are being served concurrently to the sentence in INF2001334. The trial court is directed to send the amended abstracts of judgment to the proper prison authorities.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER  
        J.

We concur:

McKINSTER  
      Acting P. J.

RAPHAEL  
      J.

18